[Cite as *State v. Green*, 2021-Ohio-4249.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                  CASE NO. 9-20-30

     v.

ILLYA GREEN AKA BLACK,              O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 2019 CR 0116

**Judgment Affirmed**

Date of Decision: December 6, 2021


APPEARANCES:

    *Illya Green,* **Appellant**

    *Nathan R. Heiser* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Illya M. Green, appeals the March 9, 2020 judgment of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

*Background*

{¶2} On March 21, 2019, agents of a multi-jurisdictional drug task force executed a search warrant of a residence at 223 West Columbia Street, Marion, Ohio. Inside the residence, law enforcement officers located cocaine and heroin. Green and another man, Kevin Swift, were arrested. Outside, law enforcement officers located Salena Glenn attempting to leave the residence in her vehicle. During a subsequent search of the vehicle, law enforcement officers located substances that were later determined to be cocaine and a mixture of fentanyl and heroin.

{¶3} On April 4, 2019, the Marion County Grand Jury issued a joint indictment charging Green, Glenn, and Swift with a variety of offenses. Specifically, the Marion County Grand Jury indicted Green on four counts: Count One of trafficking in cocaine in violation of R.C. 2925.03(A)(2), a first-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony; Count Three of aggravated possession of fentanyl in violation of R.C. 2925.11(A), a second-degree felony; and Count Five of trafficking in heroin in

violation of R.C. 2925.03(A)(1), a fourth-degree felony.[1]  Count Two contained a major drug offender specification ("MDO specification") pursuant to R.C. 2941.1410 and Count Five contained a forfeiture specification pursuant to R.C. 2941.1417.

{¶4} On April 8, 2019, Green appeared for arraignment and entered pleas of not guilty to the counts and specifications in the indictment.  Additionally, the trial court appointed counsel for Green.  However, on May 24, 2019, Green's appointed trial counsel filed a motion to withdraw as counsel due to a conflict of interest.  That same day, the trial court appointed new trial counsel for Green.[2]

{¶5} Thereafter, Green's trial counsel filed three motions to suppress evidence.  In the first motion, Green attempted to suppress numerous admissions he made to law enforcement officers on the day of his arrest.  The second motion challenged the admissibility of the evidence seized as a result of the March 21, 2019 search of the 223 West Columbia Street residence.  The final suppression motion sought to exclude evidence obtained via an electronic tracking device placed on Glenn's vehicle pursuant to a search warrant issued by the Marion Municipal Court.

{¶6} On October 2, 2019, the Marion County Grand Jury issued a superseding indictment charging Green with four counts:  Count One of trafficking

---

[1] The joint indictment contained six criminal charges; Green, Glenn and Swift were all charged in Counts One, Two, Three and Five.  However, Counts Four and Six of the joint indictment pertained exclusively to Glenn.  (Doc. No. 2).
[2] Hereinafter, all references to Green's trial counsel are to the trial counsel appointed on May 24, 2019.

in cocaine in violation of R.C. 2925.03(A)(2), a first-degree felony; Count Two of possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony; Count Three of aggravated possession of fentanyl in violation of R.C. 2925.11(A), a second-degree felony; and Count Four of trafficking in heroin in violation of R.C. 2925.03(A)(1), a fourth-degree felony. Count Two contained an MDO specification pursuant to R.C. 2941.1410 and Count Four contained a forfeiture specification pursuant to R.C. 2941.1417. The superseding indictment did not allege any new offenses or specifications. Rather, it clarified the original indictment by separating Green's four charges from those of his co-defendants. On October 7, 2019, Green appeared for arraignment on the superseding indictment and again entered pleas of not guilty to the counts and specifications.

{¶7} On November 13, 2019, the trial court held a hearing on Green's three motions to suppress evidence. In a judgment entry filed on November 15, 2019, the trial court denied all of Green's motions to suppress.

{¶8} A jury trial was scheduled to commence on February 12, 2020. However, prior to the selection of the jury, the trial court held a conversation with the parties on the record at the request of Green's trial counsel. During this conversation, Green made an oral motion for the trial court to appoint alternative trial counsel, which the trial court denied. Then, the parties reviewed the final plea

offer on the record, and Green stated that he wanted to accept the State's negotiated plea agreement rather than proceed with the jury trial.

{¶9} Thereafter, Green withdrew his pleas of not guilty and entered guilty pleas to Counts One and Four of the superseding indictment. Green also entered a guilty plea to the forfeiture specification associated with Count Four. In exchange, the State agreed to recommend dismissal of Counts Two and Three of the superseding indictment and the MDO specification associated with Count Two. The trial court accepted Green's guilty pleas, found him guilty, and ordered a presentence investigation. The trial court also dismissed Counts Two and Three and the MDO specification associated with Count Two.

{¶10} On March 5, 2020, the trial court sentenced Green to a mandatory term of 11 years in prison on Count One and 18 months in prison on Count Four. The trial court ordered that the prison terms imposed be served consecutively to one another for an aggregate term of 12 and 1/2 years' imprisonment. On March 9, 2020, the trial court filed its judgment entry of sentence.

{¶11} Thereafter, Green filed his notice of appeal. He raises four assignments of error for our review. For ease of discussion, we first address Green's third and fourth assignments of error relating to his guilty pleas and then his first and second assignments of error relating to his claim that trial counsel was ineffective.

## Assignment of Error No. III

**The trial court erred by knowingly violating Appellant-Defendant['s] invoked right to trial by jury, in violation of the Ohio Constitution Section 5, Article I, in violation of the United States Constitution.**

## Assignment of Error No. IV

**The trial court failed to comply and adhere to strict requirements pursuant [to] Crim.R. 11.  Appellant/Defendant did not voluntar[ily], knowingly, and intelligently enter the guilty plea, in violation of his rights to due process, guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States.**

{¶12} In Green's third assignment of error, he argues the trial court erred by depriving him of his right to a trial by jury.  In his fourth assignment of error, Green contends the trial court did not comply with Crim.R. 11 and, accordingly, that his guilty pleas were not knowingly, intelligently, and voluntarily entered.  Green also suggests the trial court assumed an improper function by influencing him during the plea negotiations.

*Relevant Authority*

{¶13} Under Crim.R. 11(C), guilty and no contest pleas must be made knowingly, voluntarily, and intelligently.  *State v. Miller*, 3d Dist. Mercer No. 10-18-07, 2018-Ohio-3713, ¶ 10, citing *State v. Billenstein*, 3d Dist. Mercer No. 10-13-10, 2014-Ohio-255, ¶ 48.  "Crim.R. 11(C) requires the trial judge, before accepting a guilty or no contest plea in a felony case, to inform the defendant of several rights

enumerated under the rule, making sure the defendant understands the nature of those rights." *Billenstein* at ¶ 48, citing *State v. Stewart*, 51 Ohio St.2d 86, 88 (1977). "A trial court's failure to ensure that a plea has been entered knowingly, voluntarily, and intelligently renders the plea unconstitutional." *Miller* at ¶ 10, citing *Billenstein* at ¶ 48, citing *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C) provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally * * * and doing all of the following:
>
> (a)   Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b)   Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c)   Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶14} Crim.R. 11 "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). In *Dangler*, the Supreme Court of Ohio reaffirmed that an appellate court reviewing a plea colloquy should not focus on whether the trial judge "incanted" the precise verbiage of the rule, but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea. *Dangler* at ¶ 12.

{¶15} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14-15; Crim.R. 52. Generally, to demonstrate prejudice, a defendant would have to establish that "his plea would not have otherwise been made." *Dangler* at ¶ 24.

{¶16} There are two limited exceptions to the prejudice requirement in the criminal-plea context. First, when a trial court fails to explain the constitutional rights enumerated in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, a reviewing court presumes the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Id.* at ¶ 14, citing *State v.*

*Clark*, 119 Ohio St.239, 2008-Ohio-3748, ¶ 31 and *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5800, syllabus. Additionally, the Supreme Court of Ohio has recognized one other exception to the prejudice requirement: "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22. However, "[a]side from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

*Analysis*

{¶17} Although Green argues generally that the trial court failed to comply with Crim.R. 11, he fails to direct this court to the elements of the Crim.R. 11 colloquy that were allegedly deficient. Nor does Green attempt to demonstrate that he was prejudiced by the trial court's alleged failures. "'[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal.'" *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 86, quoting *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. If an argument exists that can support an assignment of error, it is not this court's duty to root it out. *State v. Shanklin*, 3d Dist. Union No. 14-13-23, 2014-Ohio-5624, ¶ 31.

{¶18} Even so, our review of the record indicates the trial court engaged in a lengthy and complete Crim.R.11 colloquy prior to accepting Green's guilty pleas. (Feb. 12, 2020 Tr. at 49-63). Additionally, at no time during the change-of-plea proceedings was there an indication that Green did not understand the proceedings or the rights he waived by entering his guilty pleas. Rather, Green repeatedly expressed that he understood the rights that he was waiving and the details of the plea offer. (*Id.* at 36-47, 49-62). Furthermore, the record indicates that Green also executed a written guilty plea petition which detailed the rights he waived by his guilty pleas. Moreover, prior to executing the change of plea document, Green's trial counsel gave Green an explanation of the plea agreement and the rights that he would waive if he chose to enter a guilty plea. Accordingly, after reviewing the record, we find that the trial court fully complied with the requirements of Crim.R. 11.

{¶19} Green also attempts to argue that the trial court assumed an improper function and exerted inappropriate influence during the process of the plea negotiations. "The Ohio Supreme Court has held that judicial participation in plea negotiations does not render a plea invalid per se, but such involvement requires careful scrutiny to determine if 'the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial.'" *State v. Mills*, 2d

Dist. Montgomery No. 26619, 2015-Ohio-5385, ¶ 11, quoting *State v. Byrd*, 63 Ohio St.2d 288, 293-294 (1980). "'[A] plea of guilty or no contest will be presumed to be coerced if the trial judge takes a partisan position in support of the plea.'" *Id.* at ¶ 12, quoting *State v. Chenoweth*, 2d Dist. Montgomery No. 15846, 1997 WL 630018, *2 (Sept. 19, 1997). "'[T]rial judges in Ohio are permitted to participate to some undetermined extent in plea negotiations, but such participation must be carefully scrutinized to determine if the judge's intervention adversely affected the voluntariness of the defendant's plea.'" *State v. Castro*, 11th Dist. Portage No. 2009-P-0027, 2010-Ohio-828, ¶ 14, quoting *State v. Filchock*, 116 Ohio App.3d 572, 576-577 (11th Dist.1996).

{¶20} Green's argument that the trial court assumed an improper function and exerted improper influence during the process of plea negotiations appears to be based on the following exchange, which took place immediately after the trial court declined to grant Green a new attorney on the morning of trial:

| [Trial Court]: | * * * Now, Mr. Green, we are [going to] proceed to trial. It's my understanding that you think you're going to shout out during the trial and raise a ruckus. [Is] [t]hat correct? |
|---|---|
| [Green]: | No. |
| [Trial Court]: | Good. [Because] I think that would be foolish as well. These 12 people are going to see you behave that way. I would have to admonish such behavior, as I would for anybody in the courtroom that did that. And that would not make these jurors likely |

think very well of you.  You have always been a gentlemen [sic] in my courtroom.  I have tried to treat you with that respect that we clearly disagree about what the role of an attorney in a case is. Despite that, you have -- you have always been a gentlemen [sic] and I appreciate that.  It would be a shame if that changed while your fate was * * * hanging in the balance in front of 12 jurors.

(Feb. 12, 2020 Tr. at 16-17).

**{¶21}** Green argues that the above statement supports his position that the trial court assumed an improper function at the trial and exerted improper influence during the process of plea negotiations.  Green invites us to interpret the trial court judge's comment that it would be "foolish" to behave in a certain way in front of the jury as the trial court attempting to coerce Green into accepting the plea offer rather than proceeding with a jury trial.  However, within the context of the proceedings, it is clear that Green's interpretation is flawed.  Taken in the context of the proceedings, it is clear the trial court was merely instructing Green on proper courtroom behavior prior to the jury trial in an effort to avoid the necessity of reprimanding him for improper courtroom decorum in front of the jury. Accordingly, we do not find the trial court's statement to support Green's position that the trial court assumed an improper function at the trial or exerted improper influence during the plea negotiations.

**{¶22}** Further, our review of the record indicates that the trial court took great pains to ensure that Green's guilty pleas were knowing, intelligent, and voluntary.

For instance, after Green's trial counsel explained the plea offer to Green, the trial court stated:

> It's * * * completely your decision, Mr. Green [whether you want to enter a guilty plea or proceed to trial]. I'm not trying to pressure you. My job is to make sure you understand the two choices that you have and the different possible outcomes of them. Okay? And to make sure that the record is clear that [your trial counsel] has done his job and explained them to you which I believe he has both today and on other occasions.

(Feb. 12, 2020 Tr. at 31-32). Additionally, after the trial court explained the rights that Green would waive by entering guilty pleas, the trial court stated:

> And finally, Mr. Green, I just need to make sure that you're doing this voluntarily. I know we've had some discussions today and I know this is a high pressure environment because you know it[']s trial day. But has anyone threatened you in any way in order to get you to plead guilty?

(*Id.* at 61-62). Green responded, "No." (*Id.* at 62).

{¶23} Consequently, after reviewing the record, we do not find that the trial court engaged in an improper function or exerted improper influence during the plea negotiations. Further, we find that the trial court complied with the requirements of Crim.R. 11 and that Green's pleas were knowing, intelligent, and voluntary.

{¶24} Finally, we note that in his third assignment of error, Green claims the trial court deprived him of his right to a jury trial. However, Green offers no relevant support for this argument. Nor does he cite to any portion of the record to support his claim. As we previously stated, the appellant has the burden of affirmatively

demonstrating the trial court's error on appeal. *Costell*, 2016-Ohio-3386, at ¶ 86, quoting *Stelzer*, 2006-Ohio-6912, at ¶ 7. Further, "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'" *Id.*, quoting App.R. 16(A)(7). Here, not only did Green fail to include an argument regarding how the trial court deprived him of his right to trial by jury, but he also failed to provide citations to the authorities, statutes, and parts of the record that support his argument.

{¶25} In contrast to the claimed error, the record clearly indicates the trial court was willing and prepared to proceed to a jury trial. A jury had been summoned and was waiting in the courthouse. The court resolved the differences between Green and his attorney who was also prepared to proceed to trial. However, Green decided to accept the prosecution's plea offer. In doing so, he decided to waive his trial rights. Importantly, Green was advised by both his trial counsel and the trial

court that, by entering a guilty plea, he waived his right to a jury trial. (Feb. 12, 2020 Tr. at 37-38, 55-57). Thus, we need not further address Green's argument that the trial court knowingly deprived him of his right to a jury trial.

{¶26} Accordingly, Green's third and fourth assignments of error are overruled.

### Assignment of Error No. I

**The trial court erred [by] knowingly depriving the asserted right to counsel by Defendant/Appellant. He did not receive effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.**

### Assignment of Error No. II

**The trial court erred by not re-assigning Appellant Green new counsel after it was stated on [the] Plea record by [his trial counsel] that a "breakdown in attorney/client relationship" had occurred. In violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.**

{¶27} In his first and second assignments of error, Green argues that he received ineffective assistance of counsel such that his guilty plea was rendered invalid. Specifically, Green argues he was denied the effective assistance of trial counsel because the trial court did not appoint him new trial counsel on the day of the scheduled trial despite an alleged "breakdown" of the attorney-client relationship. Further, Green alleges that he received "no * * * advice at all from any counsel" during the change of plea proceedings. (Appellant's Brief at 2). Green

-15-

also argues that because the trial court did not appoint him new trial counsel, he was coerced into entering a guilty plea because he did not have the legal knowledge to proceed to trial on his own.

*Standard of Review & Analysis*

{¶28} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). The errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). Prejudice results when "'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶29} Generally, "'[a] plea of guilty waives a claim of ineffective assistance of counsel, *except to the extent the defects complained of caused the plea to be less than knowingly and voluntarily [made]*.'" (Emphasis sic.) *State v. Keller*, 3d Dist. Wyandot No. 16-18-03, 2018-Ohio-5062, ¶ 7, citing *State v. Street*, 3d Dist. Hancock No. 5-98-09, 1998 WL 682284, *2 (Sept. 30, 1998). Accordingly, we need only address Green's argument that his counsel's allegedly deficient performance rendered his guilty plea less than knowing and voluntary. "Where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offenses at issue and would have insisted on going to trial." *State v. Vinson*, 8th Dist. Cuyahoga No. 103329, 2016-Ohio-7604, ¶ 30.

{¶30} A jury trial was scheduled to commence on February 12, 2020. However, before the potential jurors were brought into the courtroom for voir dire, the parties went on the record with the trial court to discuss preliminary matters

relating to the pending criminal trial. The parties engaged in the following conversation:

| | |
|---|---|
| [Trial Court]: | We are here today because we're going to begin jury trial and we're up in the -- in 4th floor courtroom. We're [going to] go down to the third floor and pick a jury here in an hour, but I just wanted to have a conversation with Mr. Green because [his trial counsel] indicates to me that the relationship has not been great. Is that fair to say * * *? |
| [Defense Counsel]: | I think in summary there has been a -- a complete breakdown in the attorney/client relationship at this point, Your Honor. |
| [Trial Court]: | Well, you have full discovery in this case, correct? |
| [Defense Counsel]: | And I have provided him with copies * * * [and] I also provided him with copies of things that are in my [trial] notebook that he may use. |
| [Trial Court]: | So you are -- you have prepared for trial. I see you've got a trial notebook in front of you. You have given your client a copy of discovery as well as items to be used in a trial, but you indicated to the Court that [Green] basically has yelled [you] out of the visitation room at the jail on a couple of occasions now, correct? |
| [Defense Counsel]: | About the last three trips there, yes. |
| [Trial Court]: | Mr. Green, what's going on? |
| [Green]: | I -- if it pleases the Court, I want to have [my trial counsel] took [sic] off my case. |

| | |
|---|---|
| [Trial Court]: | Well, [your trial counsel] is an excellent attorney. I've known him for many years. [I've] [t]ried cases with him and he does an excellent job. What[] seems to be the problem? |
| [Green]: | Well, he informed me that I should take a plea, and by that, he's telling me he's not [going to] be * * * at his full poten[tial]. |
| [Trial Court]: | That's not what that means. That's not what that means at all. It's his job to give you an appraisal of the case and to give you a recommendation as to how or if you should resolve the case. That's his expectation. It may not be what you want to hear, but he is trying to give you good advice. * * * [T]hat's not grounds for me to remove him. Just because you don't like his advice that * * * you should considering taking * * * an offer here. |
| [Green]: | No, he's the -- like he's not-- he's not in my best interest. He has done nothing I asked him to do from the get go. |

(Feb. 12, 2020 Tr. at 2-4). When the trial court asked Green to elaborate on his trial counsel's alleged shortcomings, Green alleged that his trial counsel "filed three motions that [he] didn't tell him to file" and failed to file several motions that he requested his trial counsel to file on his behalf. (*Id.* at 4-12). Green and the trial court then engaged in the following dialogue:

| | |
|---|---|
| [Green]: | [My trial counsel] hasn't ensured me that he can[] beat this trial. So[,] I will not let him be here for me for this trial. And if [he] tells me he can't beat the trial, why would I go * * * in trial with him? |

-19-

| | |
|---|---|
| [Trial Court]: | He is giving you an evaluation of the evidence against you. That is his job. It is not * * * to tell you what you want to hear. |
| [Green]: | Which is what? * * * I don't want him to tell me what * * * I want to hear. I want him to do his job. |
| [Trial Court]: | Well, he's prepared to do that. I know [your trial counsel]. I have seen him try cases where the evidence is overwhelming for guilt and he still gives [his] best effort and I've seen him hang or get acquittals on counts in those cases. And I know that [trial counsel] will do that in this case as well. * * * But it is his job to tell you how the evidence against you stacks up. Merely telling you that it doesn't look good for you is not a basis for his removal. |
| [Green]: | Him telling me that he cannot beat this case [is] though. He cannot do nothing [sic] to fight this case is a reason for it. |
| [Trial Court]: | No, it is not. He is not a genie. It's not his job to pull a rabbit out of a hat for you. It's his job to protect your rights. He's done that. Anything else, sir? |
| [Green]: | Yes. * * * I'll ask you to remove him from my counsel. |
| [Trial Court]: | * * * [Y]our motion is denied. Anything else, sir? |
| [Defense Counsel]: | Are you asking to try the [case] on your own? |
| [Green]: | You know I want to get my own counsel. |
| [Trial Court]: | You have had since this indictment was filed to do that. You have not done that. The day of trial |

-20-

|  | is too late to do that. We're going to proceed to trial today. [Your trial counsel] is correct. If you want to represent yourself, we can have a discussion about that. I think it would be fool hearty [sic] of you to do so. But if you wish to have that … |
|---|---|
| [Green]: | Like you said, I'm not a lawyer and I don't know the law as well. |
| [Trial Court]: | That's correct. |
| [Green]: | So I would -- I would like to buy -- get me a lawyer -- an attorney. |
| [Trial Court]: | Well, the day of the * * * trial is not the day to make that decision, sir. |
| [Green]: | * * * I've been asking you for a new trial attorney before the day of trial. |
| [Trial Court]: | When was that? You have never written [me]. |
| [Green]: | When we had * * * this conversation the last time. |
| [Trial Court]: | Well, you have never written me * * * and you have not ever given me a good reason, including today, why I would remove [your trial counsel] from your case. You are not entitled to the counsel of your choosing when it is a court appointed attorney. |
| [Green]: | I ain't [sic] asking for counsel of my choosing. I'm asking for someone other than him. |
| [Trial Court]: | Well, the day of trial, that's not [going to] happen. And there is no basis that you have given me for the Court to do that. |

-21-

(*Id.* at 12-17).

**{¶31}** Thereafter, the parties discussed the final plea offer on the record, with Green's trial counsel explaining each element of the proposed plea to Green. (Feb. 12, 2020 Tr. at 17-24). Green's trial counsel also explained the weakness of his case and the danger of taking the case to trial. (*Id.* at 24). Specifically, Green's trial counsel reiterated that the trial court denied Green's three motions to suppress evidence. (*Id.* at 24-25). Therefore, the State would not be precluded at trial from introducing three separate admissions made by Green during the investigation. (*Id.*). Then, Green stated that he would accept the plea offer and enter a guilty plea rather than proceed to trial. (*Id.* at 32).

**{¶32}** Based upon the record, we do not find that Green received ineffective assistance of trial counsel such that his guilty pleas were not knowing and voluntary.

**{¶33}** "In order to justify the discharge of court-appointed counsel, a defendant must show 'good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.'" *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 27, quoting *State v. Pruitt*, 18 Ohio App.3d 50 (8th Dist.1984). "Further, when the timing of a request for new counsel is an issue, a trial court may make a determination as to whether the appellant's request for new counsel was

made in bad faith." *Id.*, citing *State v. Graves*, 9th Dist. Lorain No. 98CA007029, 1999 WL 1215161 (Dec. 15, 1999).

{¶34} First, we note that when a defendant expresses concerns regarding appointed counsel, the trial court must inquire into the nature of the complaint on the record and make a decision regarding the complaint on the record. *State v. Stein*, 3d Dist. Mercer No. 10-17-13, 2018-Ohio-2345, ¶ 28. Here, the trial court addressed Green's concerns on the record and engaged in a meaningful dialogue with Green and appointed counsel, which resulted in a resolution so the case could move forward.

{¶35} Green argues the trial court erred by not granting his request for new counsel because the relationship between him and his trial counsel had completely broken down. In order for the trial court to discharge a court-appointed attorney, "'the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" *State v. Henness*, 79 Ohio St.3d 53, 65 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. However, the record indicates that Green's strained relationship with his trial counsel was based upon Green's own actions. Specifically, the record indicates that Green screamed at his trial counsel on three occasions when counsel made visits to the jail to discuss his case. "Competent representation does not include the right to develop and share a

'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12 (1st Dist.). "Hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel." *Id.*

**{¶36}** Furthermore, the record indicates that Green's dissatisfaction with his trial counsel stemmed from Green's displeasure at his trial counsel's assessment of the strengths and weakness of his case and his trial counsel's recommendation that Green accept the State's plea offer. However, counsel's advice to Green to accept the plea offer was not a breakdown in the attorney-client relationship that jeopardized his right to effective assistance of counsel. *State v. Ortiz-Santiago*, 8th Dist. Cuyahoga No. 105441, 2017-Ohio-8878, ¶ 26. Rather, a lawyer has a duty to give his client a candid and honest appraisal of his case and has no duty to be optimistic if the facts of the case do not merit optimism. *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999). Moreover, the record indicates that, despite his advice to take the State's plea offer, his trial counsel was prepared and willing to proceed to trial on Green's behalf. (Feb. 12, 2020 Tr. at 2-3).

**{¶37}** Additionally, Green expressed that he was displeased that his trial counsel failed to file several motions at his request. Specifically, the record indicates that Green's trial counsel did not file a petition for a writ of habeas corpus

or a petition for a writ of mandamus despite Green's requests. (Feb. 12, 2020 Tr. at 8-12). However, the record indicates that Green's trial counsel declined to file the requested petitions not because he was ineffective, but because, based on his professional experience and judgment, there was no legal basis for doing so. Indeed, this court has held that "[w]e will not require counsel to file * * * frivolous motions simply for the sake of placing them on the record to avoid a charge of ineffective assistance of counsel." *State v. Robinson*, 108 Ohio App.3d 428, 433 (3d Dist.1996).

{¶38} Green also argues that he received "no advice" from his attorney during the change of plea proceedings. However, this argument is completely undermined by the record, which reveals that Green's trial counsel thoroughly explained each element of the proposed plea and the various rights that Green would waive if he chose to enter a change of plea. (Feb. 12, 2020 Tr. at 17-25, 36-43).

{¶39} Finally, in the totality of the circumstances, Green's motion for new counsel, made on the morning trial was scheduled to commence, was not timely. *See State v. Spencer*, 10th Dist. Franklin No. 16AP-444, 2016-Ohio-1140, ¶ 9 (finding that defendant-appellant's request for new counsel, made on the morning of trial, was not timely). Specifically, the record indicates that Green had formed his grievances regarding counsel well in advance of his trial date. Yet, Green failed to make a motion for a new attorney until the morning of trial. The trial court had

a right to balance Green's request for new counsel with its authority to control its own docket, while maintaining an awareness that Green's demand for counsel could be utilized as a tool to delay the proceedings. *State v. Mitchell*, 3d Dist. Union No. 14-19-14, 2019-Ohio-5168, ¶ 52.

{¶40} In conclusion, the record fails to demonstrate any breakdown in communication or cooperation between Green and his appointed counsel that would have violated Green's constitutional right to effective assistance of counsel. Rather, the record indicates the trial court thoroughly considered Green's request for substitute counsel, but found the request was neither timely nor supported by good cause. Thus, Green has failed to demonstrate that but for his trial counsel's defective performance, he would not have pleaded guilty to the offenses at issue and would have insisted on going to trial. Therefore, the defects Green complained of did not cause his plea to be less than knowingly and voluntarily made.

{¶41} Accordingly, Green's first and second assignments of error are overruled.

{¶42} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**