[Cite as *State v. Evick*, 2020-Ohio-3072.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


STATE OF OHIO,                          :

    Appellee,                       :            CASE NO. CA2019-05-010

    - vs -                          :            O P I N I O N
                                                5/26/2020
                                    :

JASON T. EVICK,                         :

    Appellant.                      :


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 17-500-123


Richard W. Moyer, Clinton County Prosecuting Attorney, Katie Wilkin, 103 E. Main Street, Wilmington, Ohio 45177, for appellee

The Law Office of John D. Hill, LLC, John D. Hill, Jr., 125 East Court Street, Suite 1000, Cincinnati, Ohio 45202, for appellant


**HENDRICKSON, P.J.**

{¶ 1}   Jason T. Evick appeals from his convictions in the Clinton County Court of Common Pleas for domestic violence and felonious assault.  For the reasons described below, this court affirms Evick's convictions.

{¶ 2}   The charges stemmed from allegations that in March 2017, Evick, through force and intimidation, confined his girlfriend, Jennifer Snider, in a rented recreational camper in a campground in Clinton County, Ohio.  The state alleged that over the course

of three days, Evick repeatedly attacked and raped Snider inside the camper.

{¶ 3} Snider stated that she managed to escape from Evick after the two left the camper and were driving in Clermont County. During that drive, Evick punched Snider in the face. She was able to jump out of the vehicle and run into a nearby restaurant and call 9-1-1.

{¶ 4} After the respective law enforcement agencies performed their investigations into Snider's allegations, a Clermont County grand jury indicted Evick for domestic violence and abduction and a Clinton County grand jury indicted Evick on charges of rape, kidnapping, domestic violence, and felonious assault. The matter first proceeded to a jury trial in Clermont County. The jury returned guilty verdicts on both counts. Last year, this court affirmed those convictions.[1]

{¶ 5} Prior to his trial in Clinton County, Evick moved to dismiss the counts of kidnapping, domestic violence, and felonious assault. Evick argued that, because of his convictions in Clermont County, any subsequent prosecution in Clinton County on those counts would violate his right to be free from double jeopardy. The court agreed with Evick with respect to the kidnapping charge and dismissed it. However, the court denied the motion with respect to domestic violence and felonious assault. The matter then proceeded to a jury trial in Clinton County.

{¶ 6} At trial, Snider testified that she was a heroin user in early 2017. She began dating Evick in January of that year and they began living together at various places. In mid-March, she and Evick rented a camper at the Green Meadows Campground in Clinton County.[2]

---

1. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791.

2. The evidence indicated that the camper was immobile. It had neither running water nor sewage facilities and was effectively a rustic shelter. Snider described Green Meadows Campground as a "really dumpy trashy place with campers * * * It's just not a very nice place to be living or staying."

{¶ 7} Snider testified that at one point during the stay, Evick accused her of attempting to obtain money from her parents so that she could leave him. She began to scream when he covered her mouth with his hand and squeezed so that she could not make noise. He then punched her in the face.

{¶ 8} On another occasion, Snider was sitting on a bench in the camper. Evick pulled her off the bench, causing her head to strike nails that were sticking out of the side of the bench. Evick then accused Snider of hiding drugs or a cell phone from him. Snider said that Evick forced her to remove her clothing and he then inspected each piece of clothing and put his fingers inside her vagina to see if she was hiding anything.

{¶ 9} Snider also testified that Evick did not allow her to leave the camper, even to use the communal restroom at the campground. Instead, she was forced to urinate and defecate in a bucket inside the camper.

{¶ 10} At another time, Snider said that Evick wanted to have sex with her. When Snider refused, Evick pinned her shoulder with his knee and ejaculated into her face. Seeing that Snider required medical attention to her shoulder following this assault, Evick drove Snider to Clinton Memorial Hospital on Monday, March 13. On the way, Evick told Snider to tell medical professionals that she had fallen down a flight of stairs.

{¶ 11} A nurse practitioner at Clinton Memorial Hospital testified that she treated Snider and that Snider told her that she had fallen on a slippery surface. The nurse practitioner observed that Snider had injuries to her left shoulder, head, and both elbows and diagnosed Snider with an AC joint sprain.

{¶ 12} Snider then testified that she and Evick returned to the camper where Evick apologized for his actions. Snider believed him and they engaged in consensual sex.

{¶ 13} Afterwards, Snider stated that Evick left her alone in the camper. The camper had an exterior lock that she tried to remove because she feared being locked inside the

camper. While attempting to remove the lock, Snider cut her hand and then went to the campground communal restroom to clean up. When she turned the sink on, she felt a sharp pain in her side and then was punched in the face. When she turned around, she saw it was Evick.

{¶ 14} Snider said that Evick left the camper again and apparently observed someone walking near the camper. He returned and accused Snider of having sex with the passerby. Snider testified that Evick then put his fingers inside of her vagina and smelled them.

{¶ 15} Snider also testified that, at one point, Evick slammed her head into a wall near a mattress in the camper. Snider stated that throughout the ordeal she was repeatedly punched in the face, choked, and slammed down onto the bed, hit with a board, and kicked.

{¶ 16} Snider stated that she ultimately went to Bethesda North Hospital for a broken tail bone, and various injuries to her face.[3] An attending physician in the emergency room at Bethesda North testified that he saw Snider on Wednesday March 15, 2017. He treated her for injuries that were consistent with an assault and included multiple abrasions and contusions to the face. Snider had also suffered a broken sacrum that the doctor opined would take substantial force to occur. Snider had reported to him that she was also suffering from rib pain, that she had been hit in both her head and her left ribs.

{¶ 17} Following her visit to the hospital, Snider entered a shelter. On Thursday, March 16, 2017, Snider contacted the Clinton County Sheriff's Office to make a report.

{¶ 18} Sergeant Terrence Meehan testified that he met with Snider on March 16 and took her report. Sergeant Meehan observed that Snider was upset and noted that she had bruises on her face and arms. Sergeant Meehan took photographs of Snider's various

---

3. Pursuant to a pretrial ruling, Snider did not testify in the Clinton County trial concerning how she escaped from Evick, or otherwise mention what occurred in Clermont County.

injuries, which photographs were introduced into evidence. Sergeant Meehan completed Snider's report and turned it in to his supervisor for review that afternoon.

{¶ 19} Detective Robert Gates testified that he was a sergeant detective with the Clinton County Sheriff's Office and was assigned Snider's case on the afternoon of Monday, March 20, 2017. The following day, he obtained a search warrant and then executed a search of the camper. He also spoke with Snider and asked her to describe what evidence he might find in the camper.

{¶ 20} Detective Gates testified that while inspecting the exterior of the camper, he used a light that would cause bodily fluids to fluoresce. Using this technique, he observed an area of fluorescence around the door of the camper, which was consistent with where Snider had indicated she cut her hand. That area tested as presumptive positive for blood.

{¶ 21} Once inside the camper, Detective Gates noted nails on the side of a bench where Snider said had said she hit her head. He observed hairs on one of the nails. Detective Gates testified that he found a hole where Snider had indicated Evick forced her head into the wall and found clumps of hair behind a mattress where Snider had said he would find them. Detective Gates took photographs of the camper as he conducted his search, which photographs were admitted into evidence.

{¶ 22} Detective Gates testified that he became aware that some of Snider's personal items had been retrieved from the camper in the time since Snider made the report on March 16 and his arrival on the scene on March 21. He understood that Snider had requested that a woman who worked at the campground retrieve these items from the camper. The items included some blankets.

{¶ 23} On cross-examination, Evick's counsel asked Detective Gates if law enforcement had spoken with any neighbors at the campground. Detective Gates said that they had and that they had a written statement from an individual who had since died.

Detective Gates said that individual heard crying for help and that Evick told the individual that Snider was high on drugs and to ignore her.

{¶ 24} On redirect, Detective Gates identified the deceased individual as Marion Lytle. Detective Gates stated that Lytle had indicated that he had been outside the camper speaking with Evick when he heard Snider inside the camper yelling for help and stating that she was being held there against her will and to get help. Evick gave Lytle various excuses for what Snider was alleging. Lytle said that he did not notify anyone because he did not want to get involved.

{¶ 25} On recross-examination, Evick's counsel asked Detective Gates whether Lytle had indicated that he had seen Snider and whether he observed any injuries on her. Detective Gates stated that he could not recall. After being presented with the written statement, Detective Gates confirmed that Lytle stated he had not seen injuries. During this line of questioning, Evick apparently became upset with his counsel in front of the jury.

{¶ 26} Evick rested without presenting evidence. The jury returned with verdicts of guilty as to domestic violence and felonious assault but not guilty as to the count of rape. Evick appeals, raising three assignments of error.

{¶ 27} Assignment of Error No. 1:

{¶ 28} THE TRIAL COURT ERRED IN DENYING JASON'S MOTION TO DISMISS COUNTS 3 AND 4 OF THE INDICTMENT AS BARRED BY DOUBLE JEOPARDY DUE TO HIS CONVICTION FOR DOMESTIC VIOLENCE IN CLERMONT COUNTY.

{¶ 29} Evick argues that the court erred by not dismissing the domestic violence and felonious assault charges because these convictions violated his constitutional rights pursuant to the Double Jeopardy Clause. Specifically, Evick argues that his conviction in Clermont County for domestic violence was premised on a single course of conduct that began in Clinton County and ended in Clermont County.

{¶ 30} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Section 10, Article I, of the Ohio Constitution provides that "no person shall be twice put in jeopardy for the same offense." The Supreme Court of Ohio has stated that the protections afforded by the Double Jeopardy Clauses of each constitution are coextensive. *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, ¶ 15.

{¶ 31} Therefore, the prohibition against double jeopardy protects individuals from three types of abuses by the criminal justice system: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gustafson*, 76 Ohio St. 3d 425, 432 (1996), citing *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892 (1989).

{¶ 32} Evick concedes that Snider's testimony in the Clermont County trial included her description of a specific assault that occurred in Clermont County, i.e., Evick punching her in the face while in the vehicle. However, Evick argues that Snider also testified as to the physical abuse that occurred in Clinton County. Evick argues that there were no intervening events that would have separated his actions against Snider in Clinton County and Clermont County.

{¶ 33} This court finds no support in the record for Evick's argument. Evick's indictment and eventual conviction in Clermont County for domestic violence was premised upon his punching Snider in the face on March 15, 2017, while in a vehicle located in Clermont County. The evidence of what occurred in Clermont County was not presented to the jury in the Clinton County case. The Clinton County convictions for domestic violence and felonious assault were for discrete acts of violence that occurred in and around the camper in Clinton County from March 13 through 15, 2017. Those acts were separately testified to and discrete from the violent act that formed the basis of Evick's conviction in

Clermont County. Evick's convictions for domestic violence and felonious assault were not second prosecutions for the same offense. For the foregoing reasons, this court overrules Evick's first assignment of error.

{¶ 34} Assignment of Error No. 2:

{¶ 35} THE TRIAL COURT DEPRIVED JASON OF HIS RIGHT TO DUE PROCESS BY DENYING HIS MOTION TO DISMISS BASED ON THE STATE'S SPOLIATION OF EVIDENCE.

{¶ 36} Evick argues that the state denied him due process of law by failing to secure the camper before potential evidence had been removed, i.e., Snider's personal items and the blankets. Evick contends that because law enforcement was aware that felony offenses were alleged to have occurred in the camper, more efforts should have been made to secure the scene before evidence that was potentially useful to his defense was removed.

{¶ 37} The United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). However, a different standard applies to the failure of the state to preserve evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S. Ct. 333 (1988). "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St. 3d 252, 254, 2007-Ohio-5239, ¶ 10. "Bad faith" implies a dishonest purpose, moral obliquity, conscious wrongdoing, ulterior motives, or ill will partaking of the nature of fraud. *State v. Gerald*, 4th Dist. Scioto No. 12CA3519, 2014-Ohio-3629, ¶ 18, citing *State v. Barron*, 2d Dist. Greene

No. 10-CA-28, 2011-Ohio-2425, ¶ 17. "Bad faith" also embraces "actual intent to mislead or deceive another." *Id.*

{¶ 38} Evick concedes that the record only supports the conclusion that any evidence that might have been recovered could only be said to be potentially useful. However, he argues that the sheriff's office acted in bad faith by not, either immediately, or in a reasonably expeditious fashion, securing the camper. Evick contends that he was not under indictment or arrest and therefore unrepresented by counsel who could have asserted his right to preserve evidence. Therefore, the state had a heightened duty to secure the crime scene in a timely manner.

{¶ 39} The evidence indicated that Snider gave her report to Sergeant Meehan on Thursday March 16, 2017. Sergeant Meehan took photographs of Snider's injuries, completed his report and turned it in to the office the same day. Sergeant Meehan testified that his report would then be reviewed by his supervisor. Once reviewed by the supervisor, it would be assigned back to him or to the detective division. The case was assigned to Detective Gates on Monday March 20, 2017. Detective Gates obtained and executed a search warrant the next day.

{¶ 40} There was no evidence presented of dishonesty, ulterior motive, or conscious wrongdoing by any of the deputies involved in securing the evidence in this case. It appears that each deputy followed the department policies and worked the case as assigned. Accordingly, the record does not support a finding of bad faith.

{¶ 41} The evidence removed from the camper was apparently blankets and personal items. Evick does not allege any other missing evidence nor does he articulate how the blankets or personal items could have assisted in his defense. For the foregoing reasons, this court overrules Evick's second assignment of error.

{¶ 42} Assignment of Error No. 3:

{¶ 43} JASON WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 44} Evick argues that he was deprived of constitutionally effective representation when his counsel elicited Lytle's hearsay testimony while cross-examining Detective Gates. Evick argues that Lytle's testimony prejudiced him because the testimony corroborated Snider's otherwise uncorroborated claims. Evick argues that counsel's only purpose in undertaking this line of questioning was to establish that Snider was a drug user, which was redundant because it had been discussed in other testimony. Evick argues that counsel's actions prejudiced him because it caused him to become upset in front of the jury.

{¶ 45} In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions. Sixth Amendment to the United States Constitution and Article I, Section 10, Ohio Constitution; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984); *State v. Hester*, 45 Ohio St.2d 71 (1976). On review of a claim that a defendant received ineffective assistance, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Burns*, 12th Dist. Clinton No. CA2013-10-019, 2014-Ohio-4625, ¶ 7.

{¶ 46} Accordingly, Evick bears the burden of proving that his trial counsel's performance was constitutionally deficient. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 142. To prevail on an ineffective assistance of counsel claim, Evick must demonstrate that (1) his counsel's performance was deficient, that is, it fell below an objective standard of reasonable representation, and (2) he suffered prejudice, that is, there is a reasonable probability the outcome of the proceeding would have been different but for trial counsel's errors. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland* at 687-688 and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-

4836, ¶ 62. A failure to satisfy either prong of this test is fatal to the ineffective assistance claim. *State v. Manning*, 12th Dist. Butler No. CA2017-08-113, 2018-Ohio-3334, ¶ 20.

{¶ 47} This court does not find that defense counsel's performance fell below an objective standard of reasonable representation. It appears that counsel's purpose in questioning Detective Gates concerning Lytle was to draw out the fact that Lytle denied observing injuries on Snider. Counsel was successful in establishing this point during cross-examination. That a defense strategy does not ultimately result in an acquittal does not mean it is deficient and Evick's own inability to maintain his composure during trial does not support a claim that his counsel provided constitutionally deficient assistance.

{¶ 48} Moreover, Evick would not be able to demonstrate prejudice on this record. Contrary to Evick's argument, this case did not rest solely on Snider's testimony. Her claims were corroborated by the physical evidence observed at the camper, the type of injuries she suffered, the photographs of those injuries, and the medical testimony concerning those injuries, including a sprained shoulder, rib pain, a broken tailbone, and numerous contusions and abrasions. The record does not support the argument that there is a reasonable probability of a changed outcome but for the introduction of Lytle's hearsay statements. For these reasons, this court overrules Lytle's third assignment of error.

{¶ 49} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.