[Cite as *State v. Alexander*, 2023-Ohio-123.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 1-22-11

    v.

FRANK E. ALEXANDER,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR1029 0301

**Judgment Affirmed**

**Date of Decision: January 17, 2023**

APPEARANCES:

*Chima R. Ekeh* for Appellant

*Jana E. Emerick* for Appellee

Case No. 1-22-11

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Frank E. Alexander ("Alexander"), appeals the January 24, 2022 judgment entry of conviction and sentence of the Allen County Court of Common Pleas. For the reasons set forth below, we affirm.

{¶2} The case stems from Alexander's sexual abuse of his three daughters, Sa.A., A.A., and Si.A., commencing in 2008 and continuing until the abuse was disclosed to law enforcement in 2019. The abuse was disclosed to law enforcement after Sa.A. believed she had observed Alexander sexually abusing her youngest sister, Si.A.[1] Following the disclosure, Alexander confessed to law enforcement to sexually abusing his three daughters. Further, Alexander wrote his daughters a letter of apology for his abuses. His confessions to law enforcement and his letter of apology were admitted into evidence at trial.

{¶3} On August 15, 2019, the Allen County Grand Jury indicted Alexander on 17 criminal charges including 10 counts of rape in violation of R.C. 2907.02(A)(1)(b), (B), all first-degree felonies; 6 counts of sexual battery in violation of R.C. 2907.03(A)(5), (B), second-degree felonies; and 1 count of gross sexual imposition in violation of R.C. 2907.05(A)(4), (C)(2), a third degree-felony.[2]

---

[1] Sa.A. was 18 years old at the time of her disclosures, A.A. was 15, and Si.A. was 12.
[2] Counts 1 through 4 involve Alexander's sexual activity with Si.A.; Counts 5 through 13, Sa.A.; and Counts 14 through 17, A.A. (Doc. No. 4).

-2-

On August 22, 2022, Alexander appeared for arraignment and entered not-guilty pleas to all 17 criminal charges.

{¶4} Alexander's jury trial commenced on December 14, 2021, wherein he was found guilty by a jury of all 17 criminal counts in the indictment including special findings under Counts 5 and 14 as to Sa.A.'s and A.A.'s ages at the time of Alexander's abuses.

{¶5} At Alexander's sentencing hearing held on January 24, 2022, the trial court imposed a mandatory prison term of 10 years to life under Counts 1, 4, 6, 7, 8, 15, 16, and 17; a mandatory prison term of 15 years to life under each Counts 5 and 14; a mandatory minimum prison term of 8 years to a maximum term of 12 years under Count 2; a mandatory term of 60 months under Count 3; and non-mandatory prison terms of 60 months each under Counts 9, 10, 11, 12, and 13. Thereafter, the trial court ordered that the prison terms under Counts 1, 2, 3, and 4 run concurrently to one another, but consecutively to all remaining counts. Then, the trial court ordered that Counts 5, 6, 7, 8, 9, 10, 11, 12, and 13 run concurrently to each other, and consecutively to all other counts. Finally, the trial court ordered that Counts 14, 15, 16, and 17 be ordered to be served concurrently to one another, but consecutively to all other counts for an aggregated stated prison term of mandatory 40 years to life.

{¶6} Alexander filed a timely notice of appeal and raises three assignments of error for our review. We will address his assignments of error in the order presented.

**Assignment of Error No. I**

**The Trial Court Violated Alexander's Federal And State Constitutional Rights To Due Process And A Fair Trial By Admitting His Confessions Without Independent Proof Of The Corpus Delicti Of The Charged Crimes In Counts 14, 15, 16, And 17. (Tr. Pg. 273, tab 21-23; Pg. 275, tab 1-23, Pg. 282, tab 9-10; Pg. 283, tab 2-21).**

{¶7} In his first assignment of error, Alexander argues that the trial court violated his right to due process and prevented him from receiving a fair trial based upon its evidentiary determinations. Specifically, he asserts the trial court permitted the State to admit State's Exhibits 11, 12, and 13 wherein Alexander detailed his sexual activity with A.A. without first requiring the State to satisfy the *corpus delicti* for the crimes of rape indicted under Counts 14, 15, 16, and 17.[3]

*Standard of Review*

{¶8} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion

---

[3] Counts 14, 15, 16, and 17 alleged A.A. to be the victim of Alexander's abuse.

-4-

implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶9} Significantly, Alexander did not raise his *corpus delicti*-admissibility argument in the trial court. Thus, Alexander failed to preserve this issue regarding State's Exhibits 11, 12, and 13 at the trial-court level for appeal. Consequently, we review the admission of his confessions and his letter of apology for plain error. *See* Crim.R. 52(B).

{¶10} For plain error to apply, the trial court must have deviated from a legal rule, the error must be plain, i.e., an obvious defect in the proceeding, and the error must have affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "[T]o demonstrate that the trial court's error affected a substantial right, the defendant must establish that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise." *State v. Sutton*, 3d Dist. Seneca No. 13-21-11, 2022-Ohio-2452, ¶ 50. We take "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Under Crim.R. 52(B), "the defendant bears the burden of demonstrating that a plain error affected his substantial rights." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14.

*Analysis*

**{¶11}** Corpus delicti is a Latin term meaning "body of the crime". *Black's Law Dictionary*, Corpus Delicti (11th Ed.2019). The corpus delicti of a crime consists of two elements: (1) the act and (2) the criminal agency of the act. *State v. Van Hook*, 39 Ohio St.3d 256, 261 (1988); *State v. Maranda*, 94 Ohio St. 364, (1916), paragraph one of the syllabus. In *State v. Edwards*, 49 Ohio St.2d 31 (1976), the Supreme Court of Ohio noted the historical origins of the corpus-delicti rule were designed to protect an accused from the admission of a confession where no crime has been committed. *Id.*, *vacated in part on other grounds*, *Edwards v. Ohio*, 438 U.S. 911, 98 S.Ct. 3147 (1978).

**{¶12}** The Supreme Court stated in *Edwards* that, in light of the "vast number of procedural safeguards protecting the due–process rights of criminal defendants, the corpus[-]delicti rule is supported by few practical or social-policy considerations." *Edwards* at 35-36. Accordingly, the Supreme Court reasoned that the corpus-delicti rule is not to be applied by trial courts with "dogmatic vengeance." *Van Hook* at 261. Consequently, to admit a criminal defendant's confession, there must be "some evidence outside of the confession that tends to prove some *material element* of the crime charged[,]" i.e. the corpus delicti. (Emphasis added.) *Maranda*, 94 Ohio St. at paragraph two of the syllabus. In other words, "[a] mere confession without corroboration by the presentation of other

evidence outside the confession which tends to prove some material element of the crime charged is not admissible." *State v. Eames*, 3d Dist. Union No. 14-93-3, 1994 WL 66643, *5 (Mar. 7, 1994), citing *State v. Black*, 54 Ohio St.2d 304 (1978).

**{¶13}** The State must provide independent evidence tending to establish the act and the criminal agency of that act. *State v. Barker*, 2d Dist. Montgomery No. 23691, 2010-Ohio-5744, ¶ 12. Importantly, this independent evidence need not equal proof beyond a reasonable doubt. *Maranda*, *supra*; *see also*, *Black* at syllabus. The State's burden is to produce "some evidence" of the corpus delicti. *Van Hook* at 261. Indeed, circumstantial evidence may be relied upon, and direct and positive proof that a crime was committed is not required. *Maranda* at 371; *State v. Nicely*, 39 Ohio St.3d 147, 154-155; *see also State v. Clark*, 106 Ohio App.3d 426 (1995). Thus, the threshold is low and the burden upon the State is not demanding.

**{¶14}** Here, Alexander argues that there is no independent physical, eyewitness, or other evidence to establish that Alexander raped A.A., other than, his confessions and apology letter. We disagree.

**{¶15}** To address the merits of his argument, we look to the elements of the rape statute. R.C. 2907.02 provides in its pertinent parts:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
>
> * * *

(b)    The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

R.C. 2907.02(A)(1)(b). "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).

{¶16} Significant to us, R.C. 2907.02(A)(1)(b) is Ohio's statutory rape provision, which imposes strict liability upon an offender who has sexual conduct with a child under the age of 13. *See In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, ¶ 30 ("The plain language of the statute makes it clear that every person who engages in sexual conduct with a child under the age of 13 is strictly liable for statutory rape, and the statute must be enforced equally and without regard to the particular circumstances of an individual's situation."). As such, neither the offender's culpable mental state, *State v. Freeman*, 8th Dist. No. 92809, 2010-Ohio-3714, ¶ 29, nor the victim's consent, *In re D.R.*, 7th Dist. No. 12 MA 16, 2012-Ohio-5341, ¶ 24, are material to a defendant's guilt under the statute. Consequently, R.C. 2907.02(A)(1)(b) only has three relevant elements: (1) the victim was not the offender's spouse; (2) the victim was under the age of 13 at the time of the sexual conduct; and (3) the offender engaged in sexual conduct with the victim.

{¶17} In this case, the State produced "some evidence" establishing the corpus delicti as to Counts 14-17 involving the victim, A.A. Specifically, the State presented evidence that A.A. is the middle daughter of Alexander's three daughters. The State further established that A.A. was less than 13 years old as to Counts 14, 15, 16, and 17 when Alexander's rapes of her occurred. *See* R.C. 2907.02(A)(1)(b). The State also submitted evidence that A.A. was not Alexander's spouse (another element of the offenses) under Counts 14-17. *Id.*

{¶18} Further, the State offered evidence that the three daughters resided with Alexander (their natural and biological father) and D.A. (Alexander's wife and their mother) continuously for the relevant time period. Thus, the State's evidence supports a reasonable inference that Alexander had access to A.A. and the opportunity to commit the sexual offenses upon her at the times alleged in the indictment.

{¶19} Moreover, the State presented evidence establishing that Alexander's *modus operandi* was that he "shaped and groomed" his daughters first by digitally penetrating them once they developed breasts (or when they neared the ages of eight or nine years old). Then, Alexander began vaginally raping the girls (through intercourse) when they reached ages 11 or 12. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20-21; *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997), fn. 2.

{¶20} Importantly, prior to admitting State's Exhibits 11, 12, and 13 (i.e., confessions and apology), the State introduced evidence of corpus delicti regarding Alexander's counts involving Sa.A. and Si.A. The State established that Alexander had engaged in a continuing course of conduct with regard to his sexual offenses involving Sa.A. beginning at the ages of eight or nine and continuing until age 17. The State further established Sa.A.'s age for each indicted count, and that she lived continuously with her parents for the relevant time period. Even though Si.A. never disclosed any sexual abuse by Alexander, Sa.A. believed she had observed her father sexually abusing Si.A, which is what prompted her disclosure of Alexander's abuse.

{¶21} Moreover, Alexander's letter of apology to his daughters supports his sexual abuse of each of them during the dates set forth in the indictment. The apology of Alexander is a separate and distinct piece of evidence and is clearly distinguishable from his confessions to law enforcement. To us, this letter supports that the State had some evidence of Alexander's abuse outside of his confession.

{¶22} Consequently, we conclude that the State met its burden by presenting "some evidence" of corpus delicti as to the rape charges in Counts 14, 15, 16, and 17. Thus, the trial court committed no error, let alone, plain error.

{¶23} Accordingly, Alexander's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant Was Denied The Effective Assistance Of Counsel When His Trial Counsel Failed To Object To The Admission Of His Confessions Prior To Any Independent Proof Of The Corpus Delicti Of The Charged Crimes In Counts 14, 15, 16, And 17. (Tr. Pg. 273, tab 21-23; Pg. 275, tab 1-23, Pg. 282, tab 9-10; Pg. 283, tab 2-21).**

**{¶24}** In his second assignment of error, Alexander asserts that he received ineffective assistance of counsel. Specifically, he argues that his trial counsel's failure to object to the admission of his confession involving A.A. under Counts 14, 15, 16, and 17 prejudiced him since the State had failed to establish the corpus delicti of rape at the time of its admission.

*Standard of Review*

**{¶25}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45, citing Sixth Amendment of the United States Constitution, Article I, Section 10 of the Ohio Constitution, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), and *State v. Hester*, 45 Ohio St.2d 71 (1976), *holding modified*, *State v. Cole*, 2 Ohio St.3d 112 (1982). A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland* at 687. In order to show

counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

*Analysis*

{¶26} Since Alexander's assertion is predicated on our resolution of his first assignment of error, and we concluded the trial court did not commit any error, Alexander cannot establish prejudice.

{¶27} To show plain error, "[t]he accused is * * * required to demonstrate a reasonable probability that the error resulted in prejudice–the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22. Therefore, as the prejudice standards for plain-error and ineffective-assistance-of-counsel claims are the same, we have already determined that the State met its burden to produce "some

evidence", and thus Alexander's confessions and apology letter were admissible. The record reveals that Alexander was not prejudiced by his trial counsel's failure to object to the State's purported failure to satisfy the corpus delicti since the corpus delicti was established by the State's evidence as detailed in our analysis of his first assignment of error. *See State v. Lee*, 3d Dist. Allen No. 1-21-27, 2022-Ohio-2622, ¶ 17.

{¶28} Accordingly, and for the reasons set forth above, Alexander's second assignment of error is overruled.

**Assignment of Error No. III**

**Offenses Set Forth In Counts 1 And 2 Are Allied Offenses Of Similar Import And Should Have Been Merged For Sentencing Purposes.**

{¶29} In his third assignment of error, Alexander argues that the trial court should have merged his rape conviction (under Count 1) and sexual-battery conviction (under Count 2) against his youngest daughter, Si.A. for purposes of sentencing.

*Standard of Review*

{¶30} " 'Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo.' " *State v. Jessen*, 3d Dist. Auglaize No. 2-18-16, 2019-Ohio-907, ¶ 22, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-955.

*Relevant Authority*

**{¶31}** Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

**{¶32}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme

Court of Ohio held the following with regard to determining allied offenses:

**1.    In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**

**2.    Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

**3.    Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

**At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct.**

> **The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff*, 2015-Ohio-995 at ¶ 26.

*Legal Analysis*

{¶33} Alexander was charged in this case with 4 crimes related to his youngest daughter, Si.A.: (Count 1) rape of a child under 13 on or about July 2, 2019; (Count 2) sexual battery by a parent against his child on or about July 2, 2019; (Count 3) gross sexual imposition of a child under 13, on or about July 2, 2019; and (Count 4) rape of a child under 13 on or about January 19, 2018, through January 18, 2019. Alexander was convicted of all 4 counts related to Si.A. and when the matter proceeded to sentencing, the trial court explicitly rejected merger for any and all of the counts against Alexander, determining, *inter alia*, that "with respect to each victim there were different incidences." (Sent. Tr. at 4).

{¶34} Alexander now argues that his convictions for rape and sexual battery against his youngest daughter, Si.A., on or about July 2, 2019, should have merged

-15-

at sentencing; however, he did not object to merger at the trial court level, so we review the matter for plain error. Importantly, in *State v. Bailey*, --- Ohio St.3d ---, 2022-Ohio-4407, the Supreme Court of Ohio has recently revisited plain error in the context of allied offenses cases, holding as follows:

> **Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in [*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459,].) *State v. McAlpin*, —— Ohio St.3d ——, 2022-Ohio-1567, —— N.E.3d ——, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52.**

(Emphasis *sic*). *Bailey* at ¶ 8.

**{¶35}** The Supreme Court of Ohio emphasized in *Bailey* that although determining whether R.C. 2941.25 has been properly applied is a legal question, "it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Id*. at ¶ 11. Further, the Supreme Court of Ohio determined that to reverse for an error under the plain error test, the error has to be "obvious." *Id*. at ¶ 14. The Supreme Court of Ohio held, "Even if we were to assume that the trial court

erred by not merging the kidnapping and rape counts, the facts of the case indicate that such an error was not obvious." *Id*. Stated differently, the plain-error doctrine

> **is warranted only under exceptional circumstances to prevent injustice. *See Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus; *see also United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings").**

*Id.* at ¶ 15.

**{¶36}** In this context, we review the evidence presented regarding Alexander's acts committed against Si.A. At trial, the evidence established that on July 2, 2019, Si.A.'s older sister went to her parents' room and found the door to the room shut and blocked from the inside to some degree. Si.A.'s older sister pushed into the room and saw Alexander, who was startled by the entrance, on his knees with his pants down. Si.A. was on the floor in front of Alexander. Si.A.'s older sister had been sexually abused by Alexander for years, and when she realized that Alexander was abusing her youngest sister, she told her brother and her brother called law enforcement.

**{¶37}** Si.A. subsequently went through a sexual assault examination. Male DNA was found inside Si.A.'s vagina, but it was "not sufficient quality for

comparison to a standard from any individual." (Tr. at 226). However, DNA consistent with Alexander's was found in Si.A.'s underwear.

**{¶38}** Alexander told law enforcement that on July 2, 2019, Si.A. let him "play with her for a minute," then she asked him to stop, so he did. The detective clarified what Alexander meant by "playing with her," and Alexander indicated that he was using his right-middle-index finger to "rub" Si.A.'s vagina, including *between* the "lips."[4] However, Alexander also admitted that he tried to put his finger inside of Si.A., but it would not go all the way in. When asked why his pants were down when the older daughter walked into the room if he was only intending to touch Si.A., Alexander initially stated that he intended to put his penis between Si.A.'s legs to masturbate himself. However, he later stated that *he was going to try to put his penis inside of Si.A.*

**{¶39}** Alexander acknowledged that the July 2, 2019 incident was not the first time he had "played with" Si.A., admitting first to at least 3 or 4 times, stating specifically that July 2, 2019 was the fourth time. However, the number of times that Alexander admitted to "playing with" Si.A. increased to 4 to 5 times. Then, subsequently, Alexander admitted that he had engaged in this conduct once or twice a week for multiple years with Si.A. and one of her older sisters. Alexander was

---

[4] "Ohio courts have consistently held that if the force of an object — like a finger — causes a victim's labia to spread, that is sufficient penetration to constitute "sexual conduct" under the statute; it is not necessary for an object to penetrate into the vagina." *State v. Sanchez-Sanchez*, 8th Dist. Cuyahoga No. 110885, 2022-Ohio-4080, ¶ 125.

specifically asked if he had put his finger inside Si.A. and her older sister's vagina at least 10 times and he answered in the affirmative.[5] Because of his actions, Alexander wrote an apology letter to his daughters "for all the hurt & pain I have caused yall [sic] over the years by playing with your body. I know that I was wrong for doing that to you guys. I didn't mean to hurt you girls." (State's Ex. 13).

{¶40} Given the facts that were presented, and Alexander's admissions in his interview, we do not find that it was error in any form, let alone plain error, for the trial court to determine that the evidence supported multiple acts of sexual conduct on July 2, 2019. Specifically, Alexander admitted to "playing" with Si.A. for as much as a minute which, in light of the totality of the testimony and foregoing admissions of Alexander in this case, the jury and trial court could have readily and reasonably construed as more than one form of sexual conduct. For example, Alexander admitted to putting his finger inside of Si.A. at least once that day, and he also admitted that on that day he was also going to *try* to put his penis inside of Si.A; a distinct and separate act of sexual conduct with a separate and distinct animus of completion of his own sexual gratification apart from the sexual battery committed with his finger.

{¶41} Given his prior admissions of engaging in sexual conduct with Si.A as often as once or twice a week for multiple years, it would not be unreasonable for

---

[5] Alexander also stated that Si.A. had "rubbed" on him one time.

both the jury at trial, and the trial court at sentencing, to construe his comments about intending to "try" to put his penis inside of Si.A on July 2, 2019, as an effort to be less than candid with law enforcement in diminishing his actual attempt to do so on that occasion. Notably, male DNA was found inside Si.A.'s vagina, and DNA consistent with Alexander's was found in Si.A.'s underwear, in addition to the fact that eyewitness testimony of Si.A's sister described seeing him positioned in front of Si.A. with his pants down, a posture entirely consistent with both forms of sexual conduct.

**{¶42}** In sum, the jury in rendering its verdict, and the trial court in weighing the merger issue, were both free to consider the totality of the evidence together with Alexander's statements and discount the credibility of any attempt to minimize his account of his own conduct toward Si.A. on July 2, 2019. In doing so, the totality of this evidence and permissible construction of the testimony in this case clearly support the trial court's determination not to merge Counts 1 and 2. As a result, and under the express terms of the latest decision of the Ohio Supreme Court in *Bailey*, it is clear that even if this court were to believe it was error for the trial court to fail to merge these counts, the appellate court does not have a legitimate path to conclude the trial court's ruling constituted plain and reversible error because the error is not "obvious." *See Bailey, supra*, at ¶¶ 14, 22. For all of these reasons Alexander's third assignment of error is overruled.

*Conclusion*

**{¶43}** For the foregoing reasons, Alexander's assignments of error are overruled and the January 24, 2022 judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and SHAW, J., concur.**

**/jlr**