[Cite as *State v. Saxton*, 2024-Ohio-882.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 6-23-06

    v.

FRANCIS WILLIAM SAXTON,

    O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Hardin County Common Pleas Court**
**Trial Court No. CRI 20222099**

**Judgment Affirmed**

**Date of Decision: March 11, 2024**

---

**APPEARANCES:**

    *Howard A. Elliott* **for Appellant**

    *Andrew R. Tudor* **for Appellee**

**MILLER, J.**

{**¶1**} Defendant-appellant, Francis William Saxton ("Saxton"), appeals the February 8, 2023 judgment of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

{**¶2**} On September 14, 2022, Saxton was indicted by the Hardin County Grand Jury on two counts: Count One of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(d), a second-degree felony; and Count Two of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), (C)(9)(e), a second-degree felony. Count Two also contained a specification for forfeiture of currency in accordance with R.C. 2941.1417(A).

{**¶3**} Saxton appeared for arraignment on September 22, 2022, where he entered not guilty pleas. The trial court also appointed trial counsel.

{**¶4**} On January 5, 2023, Saxton appeared for a change-of-plea hearing. Pursuant to a negotiated-plea agreement, Saxton withdrew his not guilty plea with respect to Count One and entered a plea of guilty. In exchange, the State recommended dismissal of Count Two. The trial court accepted Saxton's guilty plea and found him guilty of Count One. Further, the trial court ordered a presentence investigation ("PSI").

{**¶5**} On January 9, 2023, Saxton's counsel filed a motion to set aside mandatory fines due to indigency. The State filed its response in opposition to

Saxton's motion on January 12, 2023. On February 2, 2023, Saxton's trial counsel filed an amended motion to set aside mandatory fines due to indigency.

{¶6} At the sentencing hearing held on February 2, 2023, the trial court sentenced Saxton to a mandatory minimum term of four years to a maximum term of six years in prison. Furthermore, the trial court denied Saxton's motion to set aside mandatory fines and imposed a mandatory fine of $7,500.00. The trial court also ordered Saxton to pay court costs, court-appointed counsel fees, and reimbursement. The trial court further ordered the forfeiture of $1,290.00 in U.S. currency at issue in this matter. Additionally, the trial court dismissed Count Two, in accordance with the parties' agreement. The trial court filed its judgment entry of sentence on February 8, 2023.

{¶7} The following day, Saxton filed his notice of appeal. He raises two assignments of error for our review.

**First Assignment of Error**

**The trial court erred by imposing mandatory fines on the Defendant-Appellant, in that it did not conduct an inquiry into the Defendant's indigency and ability to pay fines and then set forth those findings in the sentencing entry.**

{¶8} In his first assignment of error, Saxton argues that the trial court erred by ordering him to pay a mandatory fine of $7,500 without first considering his ability to pay.

*Relevant Law*

**{¶9}** R.C. 2929.19(B)(5) requires a trial court to "consider the offender's present and future ability to pay" before imposing a financial sanction or fine under R.C. 2929.18 or 2929.32, respectively. "'The trial court is not required to hold a hearing on ability to pay, nor are there any specific factors to consider or findings to make.'" *State v. Wilkins*, 3d Dist. Shelby No. 17-13-13, 2014-Ohio-983, ¶ 17, quoting *State v. Parker*, 183 Ohio App.3d 431, 2009-Ohio-3667, ¶ 13 (3d Dist.). "'Furthermore, "a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, [appellate] courts look to the totality of the record to see if the requirement has been satisfied."'" *Id.*, quoting *State v. Crish*, 3d Dist. Allen No. 1-08-13, 2008-Ohio-5196, ¶ 50, quoting *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 42.

**{¶10}** "'"[W]hen a trial court has imposed a financial sanction without even a cursory inquiry into the offender's present and future means to pay the amount imposed, the failure to make the requisite inquiry is an abuse of discretion."'" *Parker* at ¶ 13, quoting *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149, ¶ 22 (4th Dist.), quoting *State v. Henderson*, 4th Dist. Vinton No. 07CA659, 2008-Ohio-2063, ¶ 5.

*Analysis*

**{¶11}** Our review of the record indicates that Saxton's financial situation, specifically, his present and future ability to pay the mandatory fine, was discussed

in detail at the sentencing hearing. When discussing his ability to pay, the State

stated the following:

> In this case, if you look at everything, the totality there, [Saxton] has lots of assets. He bought a house. He's probably got 40, $50,000 equity in his real estate. He put down $40,000 in cash to buy this house, which is where drug dealing was based out of. And basically that was just bought last year. He also owns at least three or four cars. One of them is a Mustang Shelby GT. That's a $64,000 purchase he made last year. Cash. No liens. None of the cars have liens.
>
> In his own PSI, he's working at Graphic Packaging, and his attorney has told counsel that * * * if he goes to prison, that's fine, they understand, but when he comes back out he's got a job back at Graphic Packaging. Additionally in there he told the Court he was working part time at a furniture company making extra money on the side, and he still has that job. And these were both jobs that he had up until the time he had the PSI written and talked with the PSI officer.
>
> He has the ability to pay the money. He's got assets of hardly any debt on cars, he's got a mortgage on his house that he's got some huge equity in, and additionally he's got the ability to maintain two jobs – not counting the illegal income that he got off drug trafficking and the drug trade. * * *
>
> The quantity [of fentanyl] he had was not for personal use. No. He had over 20 grams of this product * * *. That is a lot of Fentanyl. And that's not personal use. That's product for purposes of distribution. We also know from our own investigations of narcotics in other cases, he was one of the suppliers in Kenton at the time. This is all relevant. But * * * what I'm trying to say is, this man knows how to make a dollar and can make a dollar.
>
> He can get employed, and he can be employed in the future in spite of the fact that he might have a felony drug charge on him. When I talked to counsel, I asked him if he was going to resign from Graphic Packaging and not be fire and if he resigned that also helps his future employability. So I assume he resigned at Graphic [Packaging] rather than get himself canned therefore open his possibility for future employment. So I * * * ask the Court to impose the mandatory fine.

(Feb. 2, 2023 Tr. at 17-18).

{¶12} In response, Saxton's trial counsel argued as follows:

Now here he sits four years unable to work expecting it to be two [years in prison]. I don't know that any job's going to hold a job four years. They probably won't even remember who he is by that point. With the felony record that he will have coming out, and he's certainly not going to [become involved with drugs] again to earn money, which the State believes is where the majority of his funds have come from, you know, I don't know where he's going to come up with $7,500 plus try to live.

You know, it's obviously at the Court's discretion. We filed the motion [to set aside mandatory fines due to indigency] as we've always customarily done, regardless of what's written [in the plea agreement], and I've never had an issue with it. So, again, we'll just leave it at that, Your Honor.

(*Id.* at 20).

{¶13} Then, the trial court addressed Saxton's present and future ability to pay and stated:

Well, even the presentence investigation says that he's a 50 percent holder in a restaurant business and gets some income, though it wasn't specified how much income he gets there. So he's got income coming in from that and it's certainly an asset. From what the State has presented, there are a lot of other assets, including tens of thousands of dollars of equity in a piece of real estate.

I am going to find that he has the ability to pay. He also was working and quit his job – I understand the reasons. I'm not faulting him for that at all. But physically, he has the ability to work and earn income besides the assets, so I'm going to find that he does have the ability to pay, and I'm going to order that he pay the mandatory fine of $7,500.

(*Id.* at 20-21).

**{¶14}** Accordingly, the record indicates the trial court addressed Saxton's financial situation, including his present and future ability to pay, in great detail at the sentencing hearing. Nevertheless, Saxton argues that the State's comments regarding his financial situation were "conclusory" and were not based on any "evidence." (Appellant's Brief at 6). However, many of the State's comments were based on information contained within the PSI, a document that both parties indicated that they reviewed for accuracy. (Feb. 2, 2023 Tr. at 6-7). To the extent the State's comments were not based on information contained within the PSI, Saxton's trial counsel addressed its concern regarding the statements in its own comments to the trial court. (*Id.* at 20). Saxton was also given the opportunity to address the trial court and did not make any statements regarding his ability to pay. (*Id.* at 10-11, 23).

**{¶15}** Furthermore, the trial court indicated at the sentencing hearing that it considered the PSI prepared in the instant case. (Feb. 2, 2023 Tr. at 12, 20). The PSI included information relating to Saxton's educational background, health, prior work history, and included some information on Saxton's assets and financial situation. (*See* PSI). Specifically, the PSI indicated Saxton is 35 years old, a high-school graduate, and was in generally good physical and mental health. (PSI). The PSI also indicated that, at the time the report was prepared, Saxton was employed and had worked for that employer for several years. (PSI). The PSI also referenced his ownership interest in a restaurant and stated that he "still received dividends"

from that business. (PSI). *See State v. West,* 3d Dist. Seneca No. 13-22-07, 2022-Ohio-4069, ¶ 27-29; *Parker*, 2009-Ohio-3667, at ¶ 14-16; *State v. Clifford*, 3d Dist. Paulding No. 11-04-06, 2005-Ohio-958, ¶ 15, *reversed on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109; *Crish,* 2008-Ohio-5196, at ¶ 50 ("When the trial court considers information in the [PSI] relating to the defendant's age, health, education, and employment history, that is sufficient to comply with R.C. 2929.19(B)[5]."). Thus, it is clear the trial court considered Saxton's present and future ability to pay and we reject his argument to the contrary.

{¶16} Saxton's first assignment of error is overruled.

### Second Assignment of Error

**The trial counsel provided ineffective assistance of counsel to Defendant-Appellant when they failed to provide adequate detail of the indigency of the Defendant-Appellant in the affidavit in connection with an attempt to waive mandatory fines.**

{¶17} In his second assignment of error, Saxton argues that his trial counsel erred by failing to file a sufficient affidavit of indigency. For the reasons that follow, we disagree.

*Relevant Law*

{¶18} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A

defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶19} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

*Analysis*

**{¶20}** In support of his argument that his trial counsel was ineffective, Saxton argues that his trial counsel failed to file a sufficient affidavit of indigency with respect to the mandatory fine. Saxton argues that the affidavit of indigency his trial counsel filed was "bare bones" and only addressed Saxton's "indigency issues" in a cursory manner. (Appellant's Brief at 8-9).

**{¶21}** This court has held that "[t]he failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found the defendant indigent and relieved the defendant of the obligation to pay the fine had the affidavit been filed." *State v. Elrod*, 3d Dist. Allen No. 1-15-49, 2016-Ohio-987, ¶ 8. However, our review of the record does not support Saxton's argument that a deficiency in Saxton's affidavit of indigency resulted in the trial court ordering him to pay the mandatory fee. First, the amended affidavit indicated that Saxton expected to be sentenced to at least two years in prison, which would render him unemployed. (Doc. No. 49, Ex. B). Additionally, the affidavit stated that, upon his release from prison, Saxton anticipated difficulty obtaining employment with a similar earning potential to his previous employment due to his felony conviction. (*Id.*). Saxton also averred that his present assets "are likely to be lost due to the difficulty making required mortgage, or regular payments on those assets." (*Id.*). Furthermore, the specifics of Saxton's financial situation were discussed in great

detail at the sentencing hearing, and, as addressed in our discussion of Saxton's first assignment of error, it is clear that the trial court ordered Saxton to pay the mandatory fine after considering the totality of Saxton's financial situation, including the possible implications a four-year prison sentence would have on his present and future ability to pay.

{¶22} Additionally, in support of his position, Saxton relies heavily on *State v. Holbrook*, wherein this Court held that Holbrook's trial counsel was ineffective for failing to timely file an affidavit of indigency. *State v. Holbrook*, 3d Dist. Allen No. 1-21-32, 2021-Ohio-4362, ¶ 15. In *Holbrook*, defendant's trial counsel failed to properly file an affidavit of indigency compliant with R.C. 2929.18(B)(1). *Id.* at ¶ 13. At the sentencing hearing, the trial court and the State specifically prompted Holbrook's trial counsel to file such an affidavit prior to the imposition of the final judgment entry, yet trial counsel failed to do so. *Id.* at ¶ 14. Moreover, the record indicated, and the State conceded on appeal, that the trial court was "acutely aware" of Holbrook's indigency and was likely to have waived the mandatory fine had Holbrook's trial counsel filed a proper affidavit of indigency. *Id.* at ¶ 14-15. Accordingly, the facts in the instant case, are readily distinguishable from those in *Holbrook*.

{¶23} Thus, Saxton's second assignment of error is overruled.

*Conclusion*

**{¶24}** For the foregoing reasons, Saxton's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Hardin County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**