[Cite as *State v. Cass*, 2024-Ohio-2614.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

FREDERICK S. CASS,

    DEFENDANT-APPELLANT.

CASE NO. 10-23-08

O P I N I O N

---

Appeal from Mercer County Common Pleas Court
Trial Court No. 22-CRM-076

Judgment Affirmed

Date of Decision:  July 8, 2024

---

APPEARANCES:

    *Christopher Bazeley* for Appellant

    *Erin M. Minor* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Frederick S. Cass ("Cass"), appeals his convictions and sentence following a jury trial in the Mercer County Court of Common Pleas. Cass makes a variety of arguments, including insufficiency of evidence and that the trial court failed to merge convictions, did not properly advise him at sentencing, and erred in admitting certain evidence. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. Charges Against Cass

{¶2} The charges against Cass arose from circumstances surrounding the death of Lindeva M. Rosario ("Rosario"). She died of a fentanyl overdose on July 9, 2020. At the time of her death, Rosario and Cass were living together in an apartment and were in a romantic relationship.

{¶3} On June 16, 2022, the State filed an indictment against Cass. The indictment was superseded on May 18, 2023 and contained twelve counts:

(1) Involuntary Manslaughter, R.C. 2903.04(A), (C);

(2) Corrupting Another with Drugs, R.C. 2925.02(A)(3), (C)(1);

(3) Reckless Homicide, R.C. 2903.041(A), (B);

(4) Trafficking in a Fentanyl-Related Compound, R.C. 2925.03(A)(1), (C)(9)(b);

(5) Possession of a Fentanyl-Related Compound, pursuant to R.C. 2925.11(A), (C)(11)(a);

(6)    Rape, R.C. 2907.02(A)(1)(c), (B);

(7)    Tampering with Evidence, R.C. 2921.12(A)(1), (B);

(8)    Tampering with Evidence, R.C. 2921.12(A)(1), (B);

(9)    Tampering with Evidence, R.C. 2921.12(A)(1), (B);

(10)   Tampering with Evidence, R.C. 2921.12(A)(1), (B);

(11)   Identity Fraud, pursuant to R.C. 2913.49(B)(1), (I)(2); and

(12)   Petty Theft, pursuant to R.C. 2913.02(A)(1), (B)(2).

(Superseding Indictment). The case eventually proceeded to a jury trial, which took place from June 28 through June 30, 2023.

### B.    Evidence Elicited at Trial

{¶4} On July 9, 2020, at 3:52 a.m., a dispatcher from the Celina Police Department received a call requesting that an ambulance come to an apartment in Celina. The caller (later revealed to be Cass) said he found Rosario on the ground at the apartment, she was vomiting, she was turning blue, and her breathing was faint. EMS personnel arrived at the apartment five minutes later. Cass let them into the apartment and led them to Rosario in a back bedroom. She was not breathing and had no pulse. The upper half of Rosario's body was propped up against the wall, her head was slumped forward, her face was blue, and she had vomit coming out of her mouth.

{¶5} Police officers arrived on the scene shortly thereafter. Officer David Powell noticed a wet spot on the bed (which he assumed was vomit) and he also saw some ice. Based on his observations and the information received on the call

to the dispatcher, Officer Powell suspected Rosario had overdosed on drugs. Officer Powell asked Cass if Rosario had used drugs that night. Cass said no. According to Officer Powell, Cass appeared to be under the influence of drugs at the time and did not seem to be very concerned about what was happening. Officer Powell asked Cass several times if he had used drugs that night, and Cass said no. Police officers conducted a consent search through parts of the apartment, but they did not locate any illegal narcotics.

{¶6} Rosario was pronounced dead upon arrival at a nearby hospital. Subsequent blood testing revealed that her blood contained fentanyl, but not cocaine or cocaine metabolites. Her cause of death was a fentanyl overdose.

{¶7} On the day Rosario died, her mother, Kathy Ditson ("Ditson"), spoke to Cass multiple times. On one occasion, approximately two hours after learning her daughter had died, Cass called Ditson while she was driving back to Ohio from Iowa. According to Ditson, Cass was "real nervous, talking fast," and he said: "I need to tell you, your daughter uses cocaine" and had been using it a lot. (Trial Tr. at 228). But something seemed off to Ditson, and she told Cass that something about the situation was very wrong. Cass told her that he could show her a message from Rosario that proved Rosario was using cocaine. Cass sent Ditson a message as soon as they got off the phone. The message contained a single screenshot that depicted a Facebook Messenger conversation between Rosario and Cass. However, Ditson could tell that parts of the conversation in the screenshot were missing.

Ditson told Cass she wanted him to bring her some of Rosario's items, including her purse, checkbook, phone, and car. Cass later dropped those items off at Ditson's house.

{¶8} On the afternoon of July 9, after returning from Iowa, Ditson went to the apartment. In the back bedroom she observed what she thought were two charge cards and a rolled-up dollar bill on top of those cards with something that looked like powder at the end of it. These were on a side table next to the bed where EMS personnel had found Rosario. Ditson changed the locks to the apartment because she did not want anyone else to enter. However, Cass subsequently gained access to the apartment.

{¶9} Ditson discovered Rosario's phone had been "cleaned out"; it no longer contained photos or messages, which Ditson testified was unusual. (Trial Tr. at 241). Ditson also reviewed Rosario's bank statements and discovered $500 had been transferred out of her account on July 10—the day *after* Rosario had died.

{¶10} On July 11, Ditson provided the information she had to law enforcement, including the screenshot Cass had sent her, Rosario's phone, and the bank statements. Detective Brian Taylor from the Celina Police Department ("Detective Taylor") was assigned to investigate Rosario's death. Detective Taylor determined that the messages on the screenshot Cass had sent Ditson related to illegal drugs. After later obtaining the entirety of those messages, Detective Taylor discovered that some portions of the conversation did not show up in the screenshot,

including replies by Cass to Rosario. It turned out that those messages had been deleted.

{¶11} Detective Taylor also obtained bank records for Rosario's accounts and Cass's accounts. The records showed that Cass's credit card account was credited $500 on July 9. The source of that $500 was Rosario's bank account, via an electronic withdrawal and transfer. However, Rosario's account records showed that the $500 was not withdrawn from her account until July 10. The records also showed this was not an automatic payment.

{¶12} On July 17, 2020, Detective Taylor interviewed Cass in person and did so again two additional times, on October 23, 2020 and June 19, 2022. The jury heard recordings of all three interviews during the trial, and the trial court admitted transcripts of all three interviews as exhibits. Over time, Cass' account of the events surrounding Rosario's death changed. For example, it was shown that Cass lied to Detective Taylor regarding the content of the deleted messages. Eventually, Cass admitted to Detective Taylor that he deleted the messages because he did not want Ditson or the police to know he was involved in illegal drugs.

{¶13} During the June 19, 2022 interview, Cass made several other admissions. For example, Cass admitted that he and Rosario had snorted illegal drugs before she died; he vomited and passed out; he woke up, discovered Rosario had vomit in her mouth, attempted the Heimlich maneuver on her, and put ice on her chest (because he suspected Rosario was overdosing on drugs); and he called

the police. He also admitted to cleaning up his own vomit before the responding officers arrived, both because he did not want them to know that he too had vomited and so they would not walk through it. He had assumed Rosario was already dead before the responding officers arrived. Additionally, Cass admitted that, after responding officers and paramedics left the scene, he flushed what remained of the drugs down the toilet, washed the plate the drugs had been on, washed—and then spent—a rolled-up dollar bill that had been on that plate, and he cut up and threw out a card that also had been on that plate and had been used to "crush" the drugs.

{¶14} Cass further admitted to transferring $500 from Rosario's account after she died. According to Cass, Rosario had told him that she was going to make his $500 truck payment for him, but she died before making the payment. He then made the payment by using his cellphone, on which her account number for her debit card was already saved (according to Cass).

{¶15} Both after the close of the State's case and the close of the Defense's case, Cass moved for a judgment of acquittal, pursuant to Civ.R. 29. The trial court granted Cass' motion for acquittal on Count 10 (a count for tampering-with-evidence by moving Rosario's body), but denied it with respect to all other counts. The jury subsequently found Cass *not* guilty of Counts 1, 2, 4, and 6. The jury found Cass guilty of Counts 3, 5, 7, 8, 9, 11, and 12.

### C. <u>Sentencing</u>

{¶16} On August 15, 2023, the trial court held a sentencing hearing and ordered the following sentences for the counts in which Cass was found guilty:

(3)     Reckless Homicide, 36-month prison term;

(5)     Possession of a Fentanyl-Related Compound, 12-month prison term;

(7)     Tampering with Evidence, 36-month prison term;

(8)     Tampering with Evidence, 36-month prison term;

(9)     Tampering with Evidence, 36-month prison term;

(11)    Identity Fraud, 12-month prison term; and

(12)    Petty Theft, $500 fine.

(Aug. 24, 2023 Judgment Entry Sentencing). The trial court then ordered the terms of incarceration for Counts 5, 7, 8, 9, and 11 to be served concurrently to each other and consecutively to the prison term in Count 3, for a total prison term of six years. On August 24, 2023, Cass filed his notice of appeal.

## II.    ASSIGNMENTS OF ERROR

{¶17} Cass raises five assignments of error for our review:

**First Assignment of Error**

**The trial court erred when it failed to consider whether any of Cass' offenses of conviction merged for sentencing purposes.**

**Second Assignment of Error**

**The trial court failed to properly advise Cass of the terms of his PRC.**

**Third Assignment of Error**

**Cass' conviction for tampering with evidence, Count Eight, is not supported by legally sufficient evidence.**

**Fourth Assignment of Error**

**The trial court abused its discretion by admitting Cass' recorded confessions without any evidence in the record to show the underlying conduct.**

**Fifth Assignment of Error**

**Count Eight of the indictment charging tampering with evidence is duplicitous and prejudicial to Cass.**

### III.  DISCUSSION

#### A.  First Assignment of Error

{¶18} In the first assignment of error, Cass asserts that the trial court "failed to consider whether any of [the] charges merged." (Appellant's Brief at 3). He argues that several combinations of offenses should have merged, but only identifies three such combinations: (1) all convictions for tampering with evidence; (2) his convictions for identity fraud and theft; and (3) the "charges" of reckless homicide and trafficking in a fentanyl-related compound. He asks that we vacate his sentence and remand for resentencing so that the trial court can conduct a merger analysis.

##### 1.  Applicable Law

{¶19} "When a defendant's conduct supports multiple offenses, courts apply the allied offenses analysis set forth in R.C. 2941.25 to determine if the offenses

merge or if the defendant may be convicted of separate offenses." *State v. Woodard*,

2022-Ohio-3081, ¶ 35 (2d Dist.).  The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶20}** The Supreme Court of Ohio clarified certain aspects of this statute in

*State v. Ruff*, 2015-Ohio-995.  The court's syllabus held:

> 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.
>
> 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.
>
> 3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at syllabus.  "The evidence at trial or during a plea or sentencing hearing will

reveal whether the offenses have similar import."  *Id.* at ¶ 26.  Notably, "[m]erger

is a sentencing question, not an additional burden of proof shouldered by the state at trial." *State v. Washington*, 2013-Ohio-4982, ¶ 18. The defendant bears the burden of establishing he or she is entitled to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *Id.*

### 2. Standard of Review

{¶21} "We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25." *State v. Bailey*, 2022-Ohio-4407, ¶ 6. If the defendant did not raise with the trial court the alleged failure to merge convictions, then we review the issue for plain error. *Id.* at ¶ 7. Here, there is no indication Cass raised the merger issue with the trial court. Therefore, we review for plain error.

{¶22} In the context of allied-offense issues, the Supreme Court of Ohio set forth the following standard for plain-error review:

> Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, [defendant-appellant] must establish [1] that "an error occurred, [2] that the error was obvious, and [3] that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in [*State v.*] *Rogers*[, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22].) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52.
>
> The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*,

94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial").

(Emphasis deleted.) *Bailey* at ¶ 8-9.

### 3. Analysis

#### i. Convictions for tampering with evidence

**{¶23}** Cass was convicted of three counts of tampering with evidence. All three counts were charged under R.C. 2921.12(A)(1), which provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

Count Seven involved deleting messages. (*See* Trial Tr. at 566-567, 857). Count Eight involved cleaning the scene by cleaning up Cass' own vomit, cleaning and removing a dollar bill used by Rosario and Cass to snort illegal drugs, and destroying a card used to crush the drugs. (*Id.*) Count Nine involved destroying drug evidence by cleaning a plate the drugs were on and flushing drugs down a toilet. (*Id.*)

**{¶24}** Cass argues the convictions for these counts merge because they were "done with a joint animus," were "similar in importance to one another and were done within a reasonable amount of time to one another." (Appellant's Brief at 4). However, he has not established that all three elements of the plain-error doctrine apply to justify our intervention. Evidence at the trial supports finding that Cass's

conduct resulted in three "offenses of the same or similar kind committed *separately*," so he could be convicted of all three tampering-with-evidence offenses. (Emphasis added.) R.C. 2941.25(B); *Ruff*, 2015-Ohio-995, at syllabus ("a defendant whose conduct supports multiple offenses may be convicted of all the offenses if * * * the conduct shows that the offenses were committed separately * * *"); *see also State v. Spurrier*, 2021-Ohio-1061, ¶ 6 (11th Dist.).

### ii.     Convictions for identity fraud & theft

{¶25} Cass was convicted of both identity fraud and theft.  The identity fraud statute provides: "No person, without express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [h]old the person out to be the other person."  R.C. 2913.49(B)(1).  The term "personal identifying information" includes, but is not limited to, the name, demand deposit account number, savings account number, or other financial account number of a living or dead individual.  R.C. 2913.49(A).  On the other hand, the theft statute provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."  R.C. 2913.02(A)(1).

{¶26} According to Cass, "the basis of the Identity Fraud charge was Cass' use of [Rosario's] personal information to commit the offense of Theft of $500 from her account," so the two offenses "were committed at the same time, were equal in

import, and were done with the same motivation—to take $500 from [Rosario's] account." (Appellant's Brief at 4-5).

**{¶27}** We do *not* hold that counts for identity fraud and theft can never be merged. However, based on the evidence presented at trial, Cass has not established that all three elements of the plain-error doctrine apply to justify our intervention regarding these two counts not being merged in this case. By convicting Cass, the jury found all elements of both crimes had been proven beyond a reasonable doubt, including that Cass lacked consent from Rosario to "use, obtain, or possess" her personal identifying information and he lacked consent from Rosario to obtain or exert control over the $500 transferred from her account. Thus, when Cass held himself out to be Rosario by using her account information to access her account, without her consent, the identity fraud was complete. R.C. 2913.49(B)(1). This is true regardless of whether he proceeded to execute a transfer of money from her account to his account—and regardless of whether her account even had money in it. *See State v. Sludder*, 2012-Ohio-4014, ¶ 14 (3d Dist.) ("[t]he theft offense was completed *after* [defendant] had already committed the breaking and entering offense"; because one offense was complete before the other offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B), despite their proximity in time and that one was committed in order to commit the other [emphasis in original]).

### iii. Reckless homicide & trafficking in a fentanyl compound

{¶28} While Cass was convicted of reckless homicide (Count 3), the jury found Cass *not* guilty of trafficking in a fentanyl-related compound (Count Four). Therefore, he was not convicted of that offense. Thus, merger is inapplicable. *See* R.C. 2941.25; *State v. Earley*, 2015-Ohio-4615, ¶ 18 ("[t]he allied-offense statute, R.C. 2941.25, concerns the merger of *convictions*," and, "[b]y applying R.C. 2941.25, courts determine whether a defendant can be convicted of multiple offenses" [emphasis in original]).

{¶29} Finally, although Cass baldly asserts that "[o]ther combinations of Cass' eight counts of convictions [sic] could satisfy the *Ruff* test," he fails to elaborate any further. (Appellant's Brief at 5). He has not established the existence of plain error with respect to any combination of offenses for which he was convicted, despite needing to do so in order to prevail on this issue. *Bailey*, 2022-Ohio-4407, at ¶ 8-9. We do not find exceptional circumstances that would warrant our intervention by applying the plain-error doctrine. His first assignment of error is overruled.

### B. Second Assignment of Error

{¶30} In the second assignment of error, Cass asserts that the trial court did not properly advise him of the terms of his post-release control ("PRC") because it did not orally advise him at the sentencing hearing that: (1) he would be supervised

by the Adult Probation Authority while on PRC; (2) "he could be subject to sanctions other than imprisonment (i.e. more restrictive conditions) if he violates the conditions of PRC"; or (3) "a sentence for a violation of the conditions of his PRC could be ordered to be served consecutively to a sentence for a new felony as required by R.C. 2929.141." (Appellant's Brief at 7). Cass concedes, "those advisements are contained in the written sentencing entry" issued by the trial court. (*Id.*). Therefore, the limited issue presented on appeal is whether the trial court needed to orally notify him of those three particular items at the sentencing hearing and, if so, whether the trial court gave those notifications during the sentencing hearing.

{¶31} Cass is attempting to extend the PRC notification requirements at the sentencing hearing (codified in R.C. 2929.19) beyond the statutory language and the Supreme Court of Ohio's pronouncements. However, contrary to Cass' argument, the trial court did not need to notify him at the sentencing regarding those particular aspects of his PRC. *See State v. Gordon*, 2018-Ohio-1975, ¶ 9 ("when the notifications provided by a trial court could be more thorough but nevertheless satisfy the statutory requirements, the trial court does not err in deciding not to provide more thorough notification"); *State v. Demangone*, 2023-Ohio-2522, ¶ 25 (12th Dist.) ("[h]ad the legislature intended for defendants to be provided with additional notifications about postrelease control, it would have included those notifications and requirements in R.C. 2929.19(B)(2)"). Courts have blocked

similar attempts to expand the admonishments related to PRC. *E.g., State v. Vest*, 2024-Ohio-62, ¶ 13 (4th Dist.) ("R.C. 2929.19 has no provision mandating a trial court to notify a defendant that a violation of postrelease control could result in more restrictive sanctions"); *Gordon* at ¶ 2, 7 (neither R.C. 2929.19(B)(2)(e) nor R.C. 2929.141(A) require a trial court to notify an offender of the penalty provisions contained in R.C. 2929.141(A)).

**{¶32}** None of the three items Cass identifies are among the PRC notifications that a trial court must orally provide at the sentencing hearing. *State v. Bates*, 2022-Ohio-475, ¶ 11 ("[t]he trial court must advise the offender at the sentencing hearing of [1] the term of supervision, [2] whether postrelease control is discretionary or mandatory, and [3] the consequences of violating postrelease control"), citing *State v. Grimes*, 2017-Ohio-2927, ¶ 11.[1] They are not included in the sentencing hearing statute that identifies the statutory PRC notification requirements at the sentencing hearing. *See* R.C. 2929.19(B)(2)(e), (f).[2]

**{¶33}** Accordingly, we overrule Cass' second assignment of error.

## C. Third Assignment of Error

**{¶34}** In the third assignment of error, Cass attacks his conviction on Count Eight, the count charging tampering with evidence by cleaning the scene through

---

[1] As noted in *Bates*, the opinion in *Grimes* was overruled on other grounds by *State v. Harper*, 2020-Ohio-2913. *Bates* at ¶ 4, 13.

[2] R.C. 2929.19(B)(2)(e), not R.C. 2929.19(B)(2)(d), applies in this case because Cass was not being sentenced for a felony subject to R.C. 2929.19(B)(2)(d). He was not convicted of a "felony sex offense" and, although the reckless homicide and tampering with evidence convictions qualify as third-degree felonies, neither was "a felony of the third degree that is an offense of violence."

cleaning up his own vomit, cleaning and removing a dollar bill used by Cass and Rosario to snort illegal drugs, and destroying a card used to crush the drugs.

### 1. Standard of Review

**{¶35}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52 (1997). Thus, our review is de novo. *In re J.V.*, 2012-Ohio-4961, ¶ 3. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

**{¶36}** A sufficiency challenge disputes whether a party met its burden of production at trial. *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Tenace* at ¶ 37, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses." *State v. Jackson*, 2023-Ohio-2193, ¶ 26 (3d Dist.); *see also Jenks* at 279.

### 2. Applicable Law

**{¶37}** There are three elements the State must prove in order to establish the offense of tampering with evidence, R.C. 2921.12(A)(1). *State v. Straley*, 2014-Ohio-2139, ¶ 11. First, "the knowledge of an official proceeding or investigation in progress or likely to be instituted." *Id.* Second, "the alteration, destruction, concealment, or removal of the potential evidence." *Id.* Third, "the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *Id.*

**{¶38}** "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense." *State v. Barry*, 2015-Ohio-5449, ¶ 2; *see also* R.C. 2901.22(B) (defining "knowingly"). Thus, "merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted." *Barry* at syllabus.

### 3. Analysis

**{¶39}** Cass initially challenges the first element of the offense. While he concedes that a jury could find he expected an investigation into Rosario's death, he cites *Straley*, 2014-Ohio-2139 and argues there was insufficient evidence to show that he expected an investigation into his own use of drugs at the time he cleaned up his vomit. We disagree.

**{¶40}** "[T]he evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge." *Straley*, 2014-Ohio-2139, at ¶ 16. "Likelihood is measured at the time of the act of alleged tampering." *Id.* at ¶ 19. For example, in *Straley*, the police conducted a traffic stop of the defendant's vehicle because of her erratic driving, noted the smell of an alcoholic beverage, and asked the defendant to exit her vehicle. *Id.* at ¶ 2-4, 19. The defendant left the area to urinate, and officers later found a baggie of cocaine covered with urine where the defendant had been. *Id.* The Supreme Court of Ohio found "nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when [the defendant] discarded the baggie." *Id.* at ¶ 19. "The baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination." *Id.* Therefore, the record did not support a conviction for tampering with evidence by discarding the baggie of cocaine. *Id.*

**{¶41}** Here, in contrast to *Straley*, evidence in the record *does* suggest that officers were likely to conduct an investigation into Cass' drug use at the time he cleaned up his vomit and drug paraphernalia. Unlike the traffic stop in *Straley*, Cass invited the interaction with police when he called the police department to report Rosario's condition and request an ambulance. Thus, he knew the police would be coming to the apartment, where he and Rosario lived and used illegal drugs. Cass'

statements during his interviews—which were admitted into evidence during the State's case-in-chief—showed that he cleaned the vomit up after he called the police, but before they arrived. It would be reasonable to find that Cass knew the information he provided on the call, and the scene where the police would soon arrive, indicated Rosario probably overdosed on drugs and the police would likely investigate his own drug use or possession.

{¶42} This is further supported, for example, by Officer Powell's testimony. At trial, Officer Powell testified that, based on his observations and the information received on the call to the dispatcher, he suspected Rosario had overdosed on drugs. The information Cass provided on the call included that Rosario was not breathing, had vomited, and was blue in the face. According to Officer Powell, that was why the first thing he asked Cass upon arriving at the apartment was whether Rosario had used drugs that night. It also appeared to Officer Powell that Cass was under the influence of drugs, and he proceeded to ask Cass several times if he had used drugs that night and conducted a consent search through parts of the apartment while at the scene.

{¶43} Turning to the latter two elements of the offense, Cass concedes that, "by cleaning up the vomit the jury could find" the second element of the offense had been satisfied. However, he argues there was insufficient evidence to find he cleaned up his own vomit with the intent to prevent an investigation. Instead, Cass asserts that he cleaned up the vomit only as a sanitary measure. We again disagree.

**{¶44}** Cass admitted in his June 19, 2022 interview that the purpose of cleaning up his own vomit was that he did not want the responding officers to know he had vomited. Thus, contrary to his assertion, the evidence did not show that he only cleaned up the vomit as a sanitary measure. Instead, he did so to conceal from the officers that he had vomited like Rosario—who Cass knew had snorted illegal drugs and suspected had overdosed on those drugs. *See State v. Martin*, 2017-Ohio-7556, ¶ 112 (circumstantial evidence may be sufficient to prove an item is relevant to an investigation). Thus, the jury could reasonably infer that Cass removed his vomit because it was relevant to a likely investigation into his drug use or possession. *Id.* at ¶ 114 (based on defendant's admission to the police during a discussion about the shootings that he had burned his clothes, "the jury could reasonably infer that [defendant] destroyed the clothes because they were relevant to the shootings").

**{¶45}** Therefore, after viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found—beyond a reasonable doubt—that Cass' purpose in removing his vomit from the scene was to impair its availability as evidence in an investigation Cass knew was likely to be instituted concerning his own drug use or possession. Cass's third assignment of error is overruled.

### D. Fourth Assignment of Error

{¶46} In the fourth assignment of error, Cass argues that the State did not present the requisite evidence before certain admissions he made during Detective Taylor's interviews could be introduced to the jury, in violation of the corpus delecti rule.[3] (Appellant's Brief at 9-12). Specifically, according to Cass, the State "failed to present any evidence regarding the cleaning of the vomit, the flushing of fentanyl, or cleaning of the plate" before those admissions were presented to the jury during Detective Taylor's testimony. (*Id.* at 11-12). Those items concerned the tampering-with-evidence charges in Count Eight (cleaning the scene) and Count Nine (destroying drug evidence). Cass objected on this ground prior to Detective Taylor's testimony during the trial, and the trial court overruled his objection.

### 1. Standard of Review

{¶47} We review the trial court's decision under the abuse-of-discretion standard. *State v. Ahmed*, 2004-Ohio-4190, ¶ 79. "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 2006-Ohio-2815, ¶ 62. "Thus, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or

---

[3] For purposes of analyzing this assignment of error, we will assume that Cass' statements during the interview that are at issue qualify as confessions in the context of applying the corpus delecti rule.

unconscionably in deciding the evidentiary issues about which [Cass] complains."

*Id.*

### 2.    Applicable Law

**{¶48}** "[T]he historical origins of the corpus-delicti rule were designed to protect an accused from the admission of a confession where no crime has been committed." *State v. Alexander*, 2023-Ohio-123, ¶ 11 (3d Dist.). "Before an out-of-court confession will be admitted, the corpus delicti must be established by evidence outside the confession." *State v. Van Hook*, 39 Ohio St.3d 256, 261 (1988). Corpus delicti is a Latin term meaning "body of the crime." *Alexander* at ¶ 11, quoting *Black's Law Dictionary* (11th Ed. 2019). "The corpus delicti of a crime consists of two elements: the act and the criminal agency of the act." *Van Hook* at 261.

**{¶49}** The Supreme Court of Ohio has explained that the rule is satisfied if there is merely *some* evidence outside of the confession that tends to prove *some* material element of the crime charged. *Van Hook* at 261. Thus, "'[a] mere confession without corroboration by the presentation of other evidence outside the confession which tends to prove some material element of the crime charged is not admissible.'" *Alexander* at ¶ 12, quoting *State v. Eames*, 1994 WL 66643, *5 (3d Dist. Mar. 7, 1994).

**{¶50}** "[T]he standard of proof is not a demanding one." *Van Hook* at 261. The prosecution need only adduce some evidence tending to prove the act and its

agency, not necessarily such evidence as would rise to the level of a prima facie case. *Id.* at 261-262; *see also Alexander* at ¶ 13 (the "independent evidence need not equal proof beyond a reasonable doubt"). "[C]ircumstantial evidence may be relied upon, and direct and positive proof that a crime was committed is not required." *Alexander* at ¶ 13. "Thus, the threshold is low and the burden upon the State is not demanding." *Id.* The Court has also explained that, in light of the myriad procedural protections granted to defendants in modern criminal practice, the corpus delicti rule is supported by few practical or social policy considerations and courts do not "apply it 'with a dogmatic vengeance.'" *Van Hook* at 261, quoting *State v. Edwards*, 49 Ohio St.2d 31, 35-36 (1976), *vacated in part on other grounds*, 438 U.S. 911 (1978).

{¶51} The statute and elements for tampering with evidence are set forth above in our discussion of the first and third assignments of error, respectively. In a case also dealing with the offense of tampering with evidence, the Second District found sufficient evidence of the corpus delicti of tampering with evidence. *State v. McCormick*, 2003-Ohio-5330, ¶ 68-72 (2d Dist.). In *McCormick*, the defendant had been convicted of tampering with evidence by wiping down his gun. *Id.* Before his confession was admitted at trial as proof that he committed this offense, the State had already "produced evidence that [defendant] was wearing only one sock the night of the incident, making the inference that [defendant] likely removed the sock to wipe off the gun, and then disposed of the sock * * *." *Id.* Additionally, prior

-25-

testimony included that the defendant had told police on the night of the incident that he was wearing only one sock because he was in a hurry, police searched defendant's room for the missing sock, and they did not find the sock. *Id.* The court of appeals concluded: "Although minimal, we believe this evidence does constitute sufficient evidence of the corpus delicti of the crime of tampering with evidence, and thus we find that the trial court properly admitted [defendant's] confession." *Id.*

### 3. Analysis

**{¶52}** Here, as in *McCormick*, we find that the trial court did not abuse its discretion in deciding the State elicited sufficient evidence of the corpus delicti of the two counts for tampering with evidence before allowing the confessions at issue. At the trial, Matthew Millisor ("Millisor") testified that he and Cass had adjacent bunks in jail. Millisor testified about an alleged conversation he had in jail with Cass regarding Rosario and the circumstances surrounding her death. Cass told Millisor that he and Rosario had both used illegal drugs, he fell asleep, he woke up, and Rosario had died but he "went through the motions of" trying to save her. (Trial Tr. at 533-534).

**{¶53}** EMS personnel testified that "the caller" (Cass) was present at the scene and let them into the apartment upon arrival. (*Id.* at 296). Officer Powell testified that, based on information from Cass' phone call and what he observed while at the scene, he suspected Rosario overdosed on drugs. He also suspected that Cass was under the influence of drugs and questioned Cass about it multiple times.

Officer Powell also asked Cass if Rosario had used drugs. At least initially, Cass denied he or Rosario had used drugs. Officer Powell conducted a consent search through portions of the apartment, but did not locate any illegal narcotics during that search. Further, Officer Jeremy Kerr testified that he did not recall seeing any vomit on the side of the bed opposite to where Rosario was laying.

{¶54} Doctors testified that Rosario's blood contained fentanyl and her cause of death was a fentanyl overdose. Ditson testified that Cass had told her Rosario used cocaine and sent her the screenshot to prove Rosario's drug use. When Ditson went to the apartment on the afternoon of July 9 after returning from Iowa, she saw what she thought were two charge cards and a rolled-up dollar bill with something that looked like powder at the end of it. She also testified that, despite then changing the locks to the apartment, Cass subsequently gained access to the apartment. Ditson also testified that she spoke with police on June 11 and informed them about what she knew and had seen.

{¶55} All of this testimony was among the evidence at trial elicited by the State *before* introducing Cass' confessions at issue. In line with our discussion of the elements in the third assignment of error, this evidence at least "tends to prove some material element of" the tampering-with-evidence offenses at issue. *Alexander*, 2023-Ohio-123, at ¶ 12 (3d Dist.). Therefore, we do not find that the trial court abused its discretion in deciding the State met its low threshold for establishing the corpus delicti of these two tampering-with-evidence offenses.

*McCormick*, 2003-Ohio-5330, at ¶ 68-72 (2d Dist.); *see also State v. Blevins*, 2011-Ohio-381, ¶ 32-33 (2d Dist.) (evidence of a heroin purchase and items to inject heroin sufficiently established the corpus delicti of tampering with evidence by ingesting heroin capsules, despite the police not finding heroin; upholding trial court's decision to admit defendant's confession that she ingested the heroin capsules).

**{¶56}** Cass' fourth assignment of error is overruled.

### E.     Fifth Assignment of Error

In the fifth assignment of error, Cass argues that Count Eight of the indictment was duplicitous and prejudicial to him.

#### 1.     Standard of Review

**{¶57}** Cass acknowledges that we review this issue under a plain-error standard because he did not raise it with the trial court. *State v. Hopkins*, 2012-Ohio-5536, ¶ 14 (2d Dist.) (defendants who do not "raise the duplicity issue below" forfeit all but plain-error review). To qualify for plain-error relief, the appellant must establish: (1) occurrence of an error, i.e., a deviation from a legal rule; (2) the error was plain, i.e., it was an obvious defect in the trial proceedings; and (3) the error affected the appellant's substantial rights, meaning the error "must have affected the outcome of the trial." *State v. Morgan*, 2017-Ohio-7565, ¶ 36. Yet, even when an appellant establishes those three prongs, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *see also Morgan* at ¶ 37.

### 2. Applicable Law

{¶58} In criminal procedure, "duplicity" involves "the joining of two or more offenses in the same count of an indictment." *State v. Hendrix*¸ 2012-Ohio-2832, ¶ 37 (11th Dist.). "In other words, '[a]n indictment is duplicitous if it sets forth separate and distinct crimes in one count.'" *Id.*, quoting *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007).

### 3. Analysis

{¶59} Cass specifically complains that Count Eight "identifies three ways Cass could be found guilty of Tampering with Evidence," where two of them (disposing of the dollar and the card used to crush the drugs) allegedly related to Rosario's death but the other (cleaning up his own vomit) allegedly related to his own use of illegal drugs. (Appellant's Brief at 13). According to Cass, he was prejudiced because "a jury could have come to a decision that was not unanimous by finding that he attempted to tamper with evidence of one crime but not the other." (*Id.* at 13). This alleged prejudice "arises from the fact that the count addresses two separate offenses—the death of [Rosario] and Cass' own [drug] use." (*Id.*).

{¶60} Cass' argument is premised on faulty assertions. First, Count Eight of the indictment simply charges Cass with committing tampering-with-evidence. Cass' assertion that the count in the indictment "identifies three ways [he] could be

found guilty of Tampering with Evidence" is incorrect. *See State v. Bell*, 112 Ohio App.3d 473, 481 (3d Dist. 1996) (rejecting defendant's duplicity argument; "[i]t is never certain what portion of the evidence in any case actually convinces a jury of the guilt of an accused"); *Hendrix*, 2012-Ohio-2832, at ¶ 45 (11th Dist.), citing *State v. Gardner*, 2008-Ohio-2787, ¶ 38 (rejecting defendant's duplicity argument; "there is no requirement that a jury decide unanimously which of several possible sets of facts make up a particular element, so long as there is unanimity that each element of the charged crime was proved").

{¶61} Second, there is no support for Cass' assertion that Count Eight "addresses two separate offenses—the death of [Rosario] and Cass' own [drug] use." As shown above in our analysis of the third assignment of error, the record supports that all three evidentiary items—cleaning up his vomit, disposing of the bill used to snort the drugs, and disposing of the card used to crush the drugs— related to impairing that potential evidence's availability for the known likely investigation into Cass' own drug use. This also aligns with the jury finding Cass guilty of possession of a fentanyl-related compound. We find Cass has not established the three requirements to qualify for plain-error relief.

{¶62} Cass' fifth assignment of error is overruled.

## IV.    CONCLUSION

**{¶63}** For the foregoing reasons, Cass' assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Mercer County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**